**In re Michelle Evon ROLLINS, Debtor.**

Bankruptcy No. 92–92882.

Motion No. UST–1.

United States Bankruptcy Court, E.D. California.

Sept. 6, 1994.

Jeffrey J. Lodge, Atty. Advisor, U.S. Dept. of Justice, Office of U.S. Trustee, Fresno, CA, for U.S. Trustee.

Lloyd W. Wilson, Stockton, CA, for Chapter 7 Trustee.

## AMENDED MEMORANDUM DECISION

MICHAEL S. McMANUS, Bankruptcy Judge.

This matter is before the court on the motion of the United States Trustee to surcharge the chapter 7 trustee the sum of $31,456.03.[1]

### Statement of Facts

On July 10, 1992, Michelle Evon Rollins filed a voluntary chapter 7 petition. Her schedules, particularly Schedule B, indicated that she was entitled to receive, prior to the commencement of her case, an inheritance from the probate estate of her grandfather. She estimated that she would receive $15,000 from the estate, which was being probated in Los Angeles, and she exempted $7,400 of the expected inheritance. Ms. Rollins' schedules contained no other information, such as the probate court case number, the name and address of the executor, or the name and address of the attorney for the executor.

On August 4, 1992, the trustee, who is also an attorney, conducted the first meeting of creditors. Predictably, the topic of the inheritance came up. Ms. Rollins testified that the inheritance would be between $15,000 and $20,000 for each of the four heirs (herself and three sisters), that the inheritance was all cash, that she had not yet received the inheritance, and that she did not have a copy of the will or other specific information regarding the probate proceeding. Ms. Rollins agreed to telephone one of her sisters that same evening to obtain the information requested by the trustee.

It is now clear that Ms. Rollins was less than truthful at the first meeting. Sometime prior to July 31, 1992, Ms. Rollins received title from her grandfather's estate to a 1978 Cadillac (valued at $2,500), and on July 31, 1992, Ms. Rollins received $15,000 from the estate. Her receipt of the vehicle and the money was not disclosed to the trustee at the first meeting.

Ms. Rollins did not turn over the documents and information requested by the trustee at the first meeting. Despite Ms. Rollins' lack of prompt cooperation, the trustee did nothing to further investigate the inheritance until December 4, 1992, four months after the first meeting, when the trustee telephoned Ms. Rollins' attorney. The trustee was then given Ms. Rollins' work telephone number. When the trustee called the number, he discovered Ms. Rollins was no longer working at that location.

As it turns out, the time period between August 4, 1992, and December 4, 1992, produced some significant events. On August 24, 1992, the executor, Charles W. Tate, filed his First and Final Account in the probate proceeding, and on September 25, 1992, the Los Angeles County Superior Court entered its order settling the executor's final account and ordering a distribution to Ms. Rollins and the other heirs. Pursuant to the superior court's order, on October 15, 1992, the attorney for the executor, Steve Niemand, mailed Ms. Rollins a second check, this one for $22,378.41. This was in addition to the

---

1. In this Amended Memorandum Decision, the court has made changes of an editorial nature to its original decision. None of the court's findings of fact or conclusions of law have been substantively modified.

Cadillac and the $15,000 sent to Ms. Rollins on July 31, 1992.

In a declaration filed in connection with the surcharge motion, Mr. Niemand testified that he had no notice of the bankruptcy estate's interest in Ms. Rollins' inheritance prior to the distributions to her. He further declared that had he known of the bankruptcy estate's right to Ms. Rollins' inheritance, he would have investigated that claim before turning over the inheritance.

On December 9, 1992, the trustee obtained an order for a Federal Rule of Bankruptcy Procedure 2004(a) examination of Ms. Rollins. On January 27, 1993, Ms. Rollins appeared for the examination without her attorney.[2] According to the trustee, the debtor admitted that she had received "the inheritance" but refused to testify further without her attorney. The examination was continued to February 4, 1993, at which time neither Ms. Rollins nor her attorney appeared.

The trustee then filed a complaint against Ms. Rollins seeking to deny Ms. Rollins a discharge for failing to appear at the continued examination. Ms. Rollins did not answer the complaint and did not appear at the May 25, 1993, trial. A judgment denying Ms. Rollins' discharge was entered on June 3, 1993.

On or about July 23, 1993, the trustee filed a motion to abandon the bankruptcy estate's claim against Ms. Rollins for misappropriating the inheritance. This motion was made on the ground that Ms. Rollins had disappeared with the inheritance and, therefore, neither the inheritance nor the claim against Ms. Rollins had any value to the estate. The motion was denied.

### Discussion

The United States Trustee's motion seeks to surcharge the trustee in the amount of $31,456.03 (this amount equals Ms. Rollins' total debts rather than the total $40,879.28 inheritance received by her), and is based on the alleged negligent failure of the trustee to promptly collect the non-exempt portion of Ms. Rollins' inheritance. The United States Trustee asserts that the trustee violated his statutory duty to collect and preserve the assets of the estate. 11 U.S.C. §§ 704(1), (2).

In response, the trustee claims: (1) the United States Trustee does not have standing to bring the motion; (2) that a surcharge must be requested by adversary proceeding rather than by motion; (3) that he is protected by a "quasi-judicial" immunity; (4) that he cannot be held liable for exercising his discretion; (5) that his conduct did not constitute negligence; and (6) that his conduct was not the proximate cause of a loss to the estate.

### Adversary Proceeding versus Motion

■ The Trustee's written opposition to the motion objects to the use of a motion to request a surcharge. Federal Rule of Bankruptcy Procedure 7001(1) requires that any proceeding to recover money be brought as an adversary proceeding. Also, the few cases discussing a trustee's liability for breach of fiduciary duty and breach of his or her statutory duties suggest that a complaint rather than motion procedure must be used. *See, e.g., United States v. Aldrich (In re Rigden),* 795 F.2d 727 (9th Cir.1986); *George Benz & Sons v. Lovett (In re Schwen's, Inc.),* 20 B.R. 638 (D.Minn.), *aff'd,* 693 F.2d 48 (8th Cir.1982). Some courts, however, have considered a request to surcharge a chapter 7 trustee in connection with a motion to approve the trustee's final account and proposed distribution. *See, e.g., In re Charlestown Home Furnishing,* 150 B.R. 226 (Bankr.E.D.Mo.1993).

At oral argument the trustee abandoned his demand that this matter proceed by complaint. If the trustee wishes to relinquish the procedural protections attendant to an adversary proceeding, the court need not determine whether this matter must proceed by complaint or motion. *See In re Wlodarski,* 115 B.R. 53, 56 (Bankr.S.D.N.Y.1990).

### Standing of the United States Trustee

■ The United States Trustee is charged with establishing, maintaining, and supervising a panel of private trustees who are eligible to serve as chapter 7 trustees. 28 U.S.C. § 586(a)(1). To permit the United States Trustee to fulfill these duties, section 307 of

---

**2.** No transcript of the examination has been filed with the court.

the Bankruptcy Code allows the United States Trustee to raise any issue and be heard on any issue in any case. 11 U.S.C. § 307.

Given the broad sweep of the statutes defining the duties and standing of the United States Trustee, the trustee's assertion that the United States Trustee does not have standing to complain of and seek redress for a trustee's breach of his statutory or fiduciary duties is not well-founded. Indeed, the trustee has cited no authority for the proposition that the United States Trustee does not have standing in this matter. The ability to request a surcharge is a necessary compliment to the United States Trustee's duty to supervise chapter 7 trustees. *See In re Charlestown Home Furnishing,* 150 B.R. 226 (Bankr.E.D.Mo.1993). In the words of the Supreme Court, "[t]he most effective sanction for good administration is personal liability for the consequences of forbidden acts...." *Mosser v. Darrow,* 341 U.S. 267, 274, 71 S.Ct. 680, 683, 95 L.Ed. 927 (1951).

### The Trustee's Liability for Negligence

■ A chapter 7 trustee is charged with securing possession of assets of the estate, converting non-cash assets into money, and preserving those assets for the benefit of the creditors and the debtor. 11 U.S.C. §§ 704(1), (2); *Reich v. Burke (In re Reich),* 54 B.R. 995, 998 (Bankr.E.D.Mich.1985). A trustee who fails to exercise due diligence in collecting and preserving assets of the estate will be personally liable for assets lost through his or her intentional or negligent misconduct. *Reich v. Burke (In re Reich),* 54 B.R. at 998; *In re Cochise College Park, Inc.,* 703 F.2d 1339, 1357 (9th Cir.1983); *United States v. Aldrich (In re Rigden),* 795 F.2d 727, 730 (9th Cir.1986); *In re Power,* 115 F.2d 69, 72 (7th Cir.1940).

■ A trustee's duty of care to creditors and the debtor is measured and defined by the "care and skill ... a man of ordinary prudence would exercise in dealing with his own property...." *Restatement (Second) of Trusts* § 174 (1959). In the words of the bankruptcy court in *Reich:*

> The measure of care, diligence and skill required of a bankruptcy trustee is that of an ordinarily prudent man in the conduct of his private affairs under similar circumstances and of a similar object in view; and although a mistake of judgment is not a basis to impose liability on a trustee, a failure to meet the standard of care does subject him to liability.

*In re Reich,* 54 B.R. at 998. *See also* Daniel B. Bogart, "Liability Of Directors Of Chapter 11 Debtors In Possession: Don't Look Back. Something May Be Gaining On You," 68 *Am.Bankr.L.J.* 155, 202–204 (1994).

### Trustee's Breach of his Duty of Care

■ The United States Trustee alleges that the trustee failed to promptly investigate and collect the estate's interest in Ms. Rollins' inheritance. In the view of the United States Trustee, rather than wait four months for Ms. Rollins to provide further information regarding her inheritance, the trustee should have promptly and personally investigated her interest. Just as a trustee will immediately take custody of a bank account, the trustee should have located the executor of the probate estate to insure that the inheritance would be turned over to the trustee.

The trustee responds that there was nothing wrong or unusual in his requesting and relying on information about the inheritance from Ms. Rollins rather than from his own investigative efforts. On August 4, 1992, the date of the first meeting of creditors, he had no reason to think that Ms. Rollins would abscond with the inheritance. He was likewise unaware that Ms. Rollins had already received $17,500 of her inheritance. The trustee was also assured by the fact that Ms. Rollins was represented by an experienced and well-regarded bankruptcy attorney.

The court is not persuaded by this response. While in many, perhaps most, cases the quickest and cheapest method of obtaining information and turnover of assets is to make a demand on the debtor or the debtor's counsel, it should come as no surprise to an experienced bankruptcy trustee, that some debtors are undependable or dishonest or both. When Ms. Rollins or her attorney did not promptly provide the information requested by the trustee at the first meeting,

the trustee should have pursued other means to obtain information and seize the inheritance. The simplest method of obtaining the information would have been to inquire at the Los Angeles Superior Court. The trustee eventually got around to doing this—approximately one year after the inheritance was taken. At this late date, the request for information was made, not in an effort to collect the inheritance, but merely to document the trustee's motion to abandon the purloined inheritance. Within twenty-nine days of making written inquiry and within sixteen days of sending the Los Angeles Superior Court the fee for the information, the trustee received sufficient information to locate the attorney for the executor.

■ Precisely how much time a trustee should give a debtor to provide information or to turnover an asset will be dictated by the facts of each case. Here, the information requested by the trustee (the will, any inventory of the probate estate, and the name of the attorney representing the estate) should have been readily available to Ms. Rollins. Ms. Rollins obviously had some information about the probate proceeding since her schedules identified her expected inheritance and referred to the fact that the will was being probated in Los Angeles. At the first meeting of creditors, Ms. Rollins testified that she and her three sisters were expecting between $15,000 and $20,000 each, that this was all cash, and that the information requested by the trustee could be obtained by contacting one of her sisters. Ms. Rollins promised to call her sister the evening of August 4, 1992, to get or arrange to get the information. The trustee, therefore, should have expected the information in a matter of days and certainly no later than a week or two after the first meeting.

There were other factors which should have alerted the trustee to the need for a quick investigation. First, the inheritance was, according to Ms. Rollins' testimony, all cash—something easily converted and once converted, hard to trace. Second, the probate was pending in the Los Angeles Superior Court, a court which, according to the trustee, is split into numerous geographical divisions and serves the most populous area of this state. If Ms. Rollins could not quickly get the information regarding the probate from her sister, why did the trustee, an attorney, think Ms. Rollins, who is a cook, would be more adept than him at obtaining information from that court? True, Ms. Rollins was represented by counsel, but even the trustee recognized that it was unlikely she could afford to compensate her attorney for any investigation the attorney might perform.[3] Third, the debtor's grandfather passed away a year-and-a-half before the first meeting of creditors. The probate proceeding was not of recent vintage.

The facts of this case lead to the conclusion that when Ms. Rollins did not give the trustee the requested information very shortly after the first meeting, the trustee should have independently obtained the information then made claim against her inheritance. Accordingly, the court determines that the trustee has not exercised the care and caution that an ordinarily prudent person would exercise under similar circumstances and was, therefore, negligent.

Many of the reasons offered by the trustee to explain his conduct are merely rationalizations. The trustee testified in his declaration that in his experience: (1) debtors tend to over-estimate the value of inheritances; (2) debtors with substantial assets tend to use those assets to resolve their financial problems rather than file bankruptcy; and (3) the court tends to liberally allow dismissal of voluntary cases which appear improvident because the debtor has substantial non-exempt assets. Whether or not these generalizations have any basis in reality (and a good case could be made they do not), they are not based upon any investigation or analysis of the facts in this case.

■ The trustee next claims that whatever the result of his reliance upon Ms. Rollins, he cannot be held liable because his decision to do so was a discretionary one. As a discre-

---

3. The trustee's declaration states at page 2, lines 27–29: "It has been my experience that attorneys are generally not compensated for post first creditors meeting work so tend to give low priority to the same."

tionary judgment, according to the trustee, he cannot be held to answer when, in hindsight, his decision proves to have been incorrect or not the best alternative.

■ First, there was nothing discretionary about the trustee's judgment or actions in this case. Collecting and preserving the estate's property is the primary duty of the trustee and it is not discretionary.[4] Second, even if a judgment is discretionary, liability will still be imposed upon the trustee if the trustee is negligent in the exercise of that discretion. *Southwestern Media, Inc. v. Rau,* 708 F.2d 419, 425 (9th Cir.1983).

### The Trustee's Negligence as the Proximate Cause of Damage to the Estate

■ Whether or not the trustee's conduct was the proximate cause of loss to the estate is a close question. As to the $17,500 distributed to the debtor after the commencement of her chapter 7 case but before the first meeting of creditors, the court concludes that the trustee's conduct was not the cause of damage to the estate. At the first meeting, Ms. Rollins did not disclose receipt of the money even though she was asked if she had received the inheritance. Given that the schedules contained only minimal information about the inheritance and the probate proceeding, it was not unreasonable for the trustee to defer further investigation until after he had the opportunity to question Ms. Rollins at the first meeting.

■ The remainder of the inheritance, $22,378.41, however, was received by the debtor after the first meeting. The court concludes that the trustee had ample time to investigate the inheritance and seize it for the estate. As previously discussed, had the

trustee simply contacted the superior court, he would have obtained sufficient information to locate the executor or his attorney. The trustee's own experience one year later demonstrated that the information could be obtained by written request in less than one month. More judicious use of the telephone and a Los Angeles attorney or copy service might well have produced even faster results. Allowing the debtor two weeks to provide the information, then giving the trustee thirty days to obtain the information, the trustee could have contacted the executor or his attorney by September 17, 1992—well before the $22,378.41 was mailed to the debtor on October 15, 1992.

■ The trustee interjects that there was no assurance that the probate court or the executor would recognize the right of the bankruptcy estate to the debtor's inheritance. The trustee's interjection is, however, unpersuasive. First, the attorney for the executor has testified that if he had been aware of the estate's interest in the inheritance, he would not have distributed the money without investigating the claim. Second, in the event there had been any difficulty in obtaining turnover of the inheritance, the turnover remedy provided by section 542 of the Bankruptcy Code was available to the trustee as well as appropriate injunctive relief to compel turnover of the inheritance to the estate.[5]

The trustee's failure to promptly investigate the debtor's inheritance resulted in a loss of $22,378.41 to the estate. The assertion by the trustee that creditors have not been damaged because the debtor will not receive a discharge is too simplistic. If the trustee had diligently executed his duties,

---

**4.** Some judgments and decisions the Bankruptcy Code requires a trustee to make are discretionary, such as the decision to assume or reject an executory contract. *See, e.g., In re Airlift Int'l, Inc.,* 18 B.R. 787, 789 (Bankr.S.D.Fla.1982). Other judgments and actions are not discretionary, such as preserving the property of the estate. *See, e.g., Reich v. Burke (In re Reich),* 54 B.R. 995 (Bankr.E.D.Mich.1985).

**5.** If the executor had been reluctant to turnover the debtor's inheritance, the trustee's position would have been very similar to that of a judg-

ment creditor attempting to levy upon a judgment debtor's inheritance. California law permits the creditor to obtain an assignment of the debtor's right to payment. Cal.Civ.Pro.Code §§ 708.510, 708.520. If the person obligated to pay the debtor ignored the assignment order and continued to pay the debtor, the obligor would be liable to the creditor. Cal.Civ.Pro.Code §§ 708.540, 701.020. Similar relief was available to the trustee. 11 U.S.C. §§ 542, 105(a); Fed.R.Bankr.P. 7065, 7069; Fed.R.Civ.P. 65, 69(a).

$22,378.41 would have come into the estate and been distributed to creditors in accordance with section 726(a) of the Bankruptcy Code. Instead, creditors will be left to their own devices to locate and sue the debtor then collect a judgment. From the perspective of the creditors, this "asset" bankruptcy has been an unqualified failure. There has been a loss to the estate.

### Derived Judicial Immunity

■■■ The trustee finally argues that even if he was negligent, and even if his conduct was the proximate cause of a loss to the estate and its creditors, he is shielded from liability by a judicial immunity. This immunity was purportedly derived from the court by virtue of its ruling on the trustee's motion to abandon the inheritance.

As briefly mentioned above, the trustee filed a motion to abandon the inheritance (or the claim against the debtor for having wrongfully taken the inheritance) after it became clear that Ms. Rollins had disappeared with it. At the hearing on the motion, the trustee explained that he brought the motion to insure that the United States Trustee would neither object to the closing of the case nor attempt to surcharge him for failing to pursue the claim against the debtor. At the hearing on the motion, both the court and United States Trustee made clear to the trustee that, while his decision not to contin-

ue to pursue the debtor would not be the basis of a future surcharge action, his conduct earlier in the case might be.[6] In fact, in this surcharge motion, the United States Trustee is not seeking a surcharge for failing to pursue Ms. Rollins after the fact—there is no question that Ms. Rollins has disappeared and further pursuit of her is not cost effective. Instead, the trustee is being surcharged for having failed to promptly collect the inheritance—for allowing Ms. Rollins to disappear with it.

Even if the court had granted the motion to abandon the claim against Ms. Rollins for having taken the inheritance, that order would not provide comfort or derived judicial immunity to the trustee. While the inheritance may be of inconsequential value and benefit to the estate, it obtained this lowly status because of the trustee's negligence.

■■■ A trustee, who is subjected to a claim by a beneficiary of the bankruptcy estate, can claim a derived judicial immunity in one circumstance. If a trustee, prior to taking action, and after making a full disclosure of all relevant facts, obtains a court order, then acts on the basis of that order, he or she may be immune from any personal liability. *See, e.g., Boullion v. McClanahan,* 639 F.2d 213 (5th Cir.1981); *Lonneker Farms, Inc. v. Klobucher,* 804 F.2d 1096 (9th Cir.1986).[7]

---

6. At the February 10, 1994, hearing on the trustee's abandonment motion, the following colloquy occurred:

Mr. Wilson: Your Honor, to provide some protection, one of the purposes of applying for the abandonment is to be sure that the trustee is not later ... charged for not pursuing a claim.

. . . .

Mr. Wilson: ... the application has been denied without prejudice, but I assume that I guess something else should be stated in the order that the trustee is authorized to proceed to close....

The Court: Mr. Lodge, any problem with that?

Mr. Lodge: Not in the general. I think it's pretty self evident that the trustee's free to proceed to close the case.

The Court: ... I don't think under the circumstances that have been presented that your closing the case—I mean, your failing to abandon is any basis for a surcharge against you....

. . . .

The Court: If I heard Mr. Lodge correctly, he may quibble with you about something that occurred prior to today—

Mr. Lodge: Right.

. . . .

Mr. Wilson: Then would that include a finding then the Court—a Court finding that pursuit of it at this time is not justified?

The Court: Under the circumstances, it does not appear that further pursuit of the debtor to collected the purloined inheritance is appropriate or warranted....

7. When sued by someone other than a debtor or a creditor, the trustee may also claim a limited immunity. If a trustee incurs a contract or tort liability to someone other than the debtor or a creditor of the estate, he is entitled to a qualified judicial immunity. The contract or tort claimant is generally permitted to pursue the estate and the trustee in his or her representative capacity, but not personally. E.A. Tiller, "Personal Liability of Trustees and Receivers in Bankruptcy," 53 Am.Bankr.L.J. 75 (1977); Daniel B. Bogart, "Liability of Directors of Chapter 11 Debtors in Possession: Don't Look Back. Something May Be Gaining on You," 68 Am.Bankr.L.J. 155, 202–204 (1994).

78

In this case, the trustee sought no order or instruction from the court regarding the investigation and attempt to collect the inheritance. There is, then, no basis for his immunity defense.

### Conclusion

The court concludes that there is a basis for a surcharge of the trustee. The amount of the surcharge shall be $22,378.41. Upon payment of this amount to the estate by the trustee and upon collection of sufficient other assets to pay all claims in full with appropriate interest, the trustee shall be subrogated to the estate's claims against the debtor.

. This memorandum decision constitutes the findings of fact and conclusions of law of the court. The United States Trustee shall prepare an order consistent with this decision.