**In re Dr. John Philip AVERY and Cydney Ann Avery, Debtors.**

No. 98–34984–A–13L.

United States Bankruptcy Court,
E.D. California,
Sacramento Division.

Jan. 30, 2002.

Samuel W. Gordon, Esq., Hemar, Russo & Heald, LLP, from Encino, California American Investment Financial.

Andrew M. Henderson, Esq. and Mary Clarke Ver Hoef, Esq., Law Office of Andrew M. Henderson, A Professional Corporation, for Dr. John Philip Avery and Cydney Ann Avery.

## MEMORANDUM DECISION

MICHAEL S. MCMANUS, Chief Judge.

This case requires the court to determine whether it may vacate a chapter 13 discharge on the motion of a creditor whose timely filed proof of claim was not paid by the trustee as required by the chapter 13 plan. The court concludes that the motion must be granted.

I

In John and Cydney Avery's earlier chapter 7 case, American Investment Financial ("AIF") filed a complaint objecting to the discharge of a debt. The parties settled the complaint prior to trial. Dr. and Mrs. Avery ("the debtors") stipulated to the entry of a nondischargeable judgment in favor of AIF in the amount of $11,756.90. This judgment was entered on November 8, 1998.

Shortly before entry of the judgment, the debtors filed a chapter 13 petition. The chapter 13 petition, however, came as no surprise to AIF. The day before the debtors filed it, their original attorney,

Julius Cherry, wrote to AIF's attorney and informed him as follows:

Enclosed for your review is a copy of schedules E, F, and Debtor's Plan. Be advised, Dr. & Mrs. Avery's Chapter 13 Bankruptcy Petition will be filed with the court on September 29, 1998. As indicated in the enclosed documents, American Investments will be paid 100%.

In other words, AIF agreed to a stipulated judgment in the chapter 7 case and to the payment of that judgment in the context of a chapter 13 plan.

The debtors scheduled only two creditors in their chapter 13 case, the Internal Revenue Service ("IRS") and AIF. According to the debtors' schedules, the IRS held total priority claims of $4,408.00 for 1996 and 1997 income taxes, and AIF held an undisputed, liquidated, noncontingent, and unsecured claim in the amount of $14,656.56.

The debtors' chapter 13 plan proposed to pay $350.00 a month to the chapter 13 trustee for 60 months. The plan instructed the trustee to pay administrative expenses[1] first, then 100% of the priority claims, and finally 100% of the general unsecured claims. The court confirmed the plan without objection on December 16, 1998.

Assuming the maximum trustee compensation[2] and no other administrative expenses, the debtors should have paid the

1. In most chapter 13 cases, other than the chapter 13 trustee's compensation, the only administrative expense is the fees of the debtor's attorney. In this case, Mr. Cherry filed a statement pursuant to Fed. R. Bankr.P. 2016(b) disclosing that he would be paid no attorney's fees during the case. A review of the record confirms that the court awarded no fees to him, either in connection with plan confirmation or a separate fee application.

2. 28 U.S.C. § 586(e)(1)(B) permits the chapter 13 trustee to collect a percentage fee not to exceed 10% of the payments made under the plan. Thus, of the $350.00 paid by the debtors to the trustee each month, no less than $315.00 would be distributed to creditors.

$19,054.56 in total scheduled claims over approximately 60 months.[3]

The last day to file a timely proof of claim was February 16, 1999. *See* Fed. R. Bankr.P. 3002(c). On October 4, 1998, the IRS filed its proof of claim in the total amount of $4,719.20. It was comprised of a priority claim of $4,133.75 for taxes and pre-petition interest, and a general unsecured claim for a tax penalty of $585.45.

On January 19, 1999, AIF filed a timely proof of claim utilizing the standard proof of claim form, Official Form 10.[4] On the form, AIF completed the court and case information (the location of the court, the debtors' names, the chapter number, and case number), as well as its own name and address. The face of the proof of claim also indicated that AIF's account number was 701003413, that its claim arose from a loan of money to the debtors, and that the debtors incurred the debt on April 21, 1995. AIF did not include on the face of the proof of claim any other information regarding its claim, such as its amount and whether it was a secured, priority, or general unsecured claim.

AIF attached to its proof of claim, however, copies of a promissory note and written financial disclosures it gave to the debtors in connection with the loan. From these copies, it was possible to determine that AIF's claim was unsecured, that the loan was in the original amount of $15,000.00, and that a total of $8,923.20 in finance charges would accrue over the 72 month term of the loan. AIF did not append a copy of the nondischargeable judgment to the proof of claim.

■ The chapter 13 trustee was aware that the IRS and AIF had filed timely proofs of claim. He reported their claims in the Notice of Filed Claims ("the Notice"), filed on April 9, 1999.[5] The No-

---

3. The debtors scheduled priority claims of $4,408.00 and AIF's general unsecured claim of $14,656.56. These claims totaled $19,054.56. Net of trustee compensation, approximately $315.00 of the $350.00 monthly plan payment would be available for distribution to creditors. At this rate, the debtors would have competed their plan in 60.49 months.

4. AIF's attorney did not file the proof of claim. AIF filed its own proof of claim. It was executed by Jennifer W. Gleave, AIF's assistant vice president.

5. Nothing in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure requires the trustee to prepare this Notice. The Notice is a creature of this court's General Order on chapter 13 practice. *See* General Order 01–02 and its predecessors, General Orders 97–02 and 00–02, at ¶ 6. The General Order requires the trustee to review the filed proofs of claim and to summarize them in the Notice. It is then filed and served on the debtor and the debtor's attorney, if any, no later than the longer of 250 days after the order for relief or 180 days after plan confirmation.

Because a chapter 13 plan is typically confirmed before the expiration of the bar date for filing proofs of claim, it is not unusual for inconsistencies to develop between the plan and the proofs of claim.

For instance, suppose a proof of claim is not filed for a secured debt. A proof of claim must be filed before a claim may be paid through the plan. *In re Osborne*, 76 F.3d 306, 308–309 (9th Cir.1996); *In re Tomlan*, 102 B.R. 790, 791–92 n. 1 (E.D.Wash.1989), *aff'd per curiam*, 907 F.2d 114 (9th Cir.1990); *Meadowbrook Estates v. McElvany Inc. (In re Meadowbrook Estates)*, 246 B.R. 898, 902–03 (Bankr.E.D.Cal.2000). *See also* Chapter 13 Plan filed September 29, 1998 ("Only creditors filing proofs of claim and whose claims are provided for in this plan will be paid through this plan."). Because the lien securing a secured claim will survive the chapter 13 discharge, a chapter 13 debtor is usually motivated to file a proof of claim on behalf of a secured claim holder in order to insure the claim is paid, thereby freeing the claim's collateral from the lien. *See e.g., In re Meadowbrook Estates*, 246 B.R. at 902; *Matter of Tarnow*, 749 F.2d 464, 465 (7th Cir.1984); *In re Bisch*, 159 B.R. 546, 549 (9th Cir. BAP 1993).

tice advised the debtors and their attorney that the IRS had filed a priority claim for $4,133.75 and a general unsecured claim of $595.45.[6] But the Notice erroneously reported the amount of AIF's proof of claim as "$0.00."

▮▮▮▮ The court does not understand the reasoning that prompted the trustee to process AIF's proof of claim as if it were a demand for nothing. Although AIF's claim was not a model of clarity or completeness, by no stretch of the imagination can it be construed as a demand for nothing. The claim does not demand "$0.00" or "nothing." At worst, the face of the proof of claim was silent about the amount and classification of the claim. The attachments to the proof of claim made up for this paucity of detail and dispelled any doubt that AIF was demanding money from the estate—AIF wanted the debtors to repay the $15,000.00 loan.

AIF's proof of claim was adequate in form and content for purposes of Fed. R. Bankr.P. 3001(a), which defines a proof of claim as a written statement setting forth a creditor's claim that substantially complies with Official Form 10. Because a representative of AIF executed its proof of claim and filed it with the court, the claim was presumptively valid and entitled to payment absent an objection by the trustee or the debtors. 11 U.S.C. § 502(a); Fed. R. Bankr.P. 3001(f). Thus, if the attachments to AIF's proof of claim did not inform the trustee of the amount and classification of the claim, the trustee should have objected to the proof of claim rather than unilaterally deeming it a demand for nothing.

A creditor does not normally take the time and trouble to file a proof of claim if it is owed nothing or if it does not wish to pursue its claim. Such a creditor is more apt to do nothing rather than file a proof of claim demanding nothing.[7] On the other hand, when a creditor files a claim, the creditor usually wants money.[8]

Similarly, if the plan fails to provide for a secured or priority claim, the claim will not be paid even if the creditor files a proof of claim. In such cases, in order to comply with 11 U.S.C. §§ 1322(a)(2) and 1325(a)(5) and to obtain the broadest possible chapter 13 discharge pursuant to 11 U.S.C. § 1328(a), the debtor will usually wish to modify the plan in order to provide for any omitted secured or priority claim.

The Notice, then, alerts the debtor to the possible need to object to a proof of claim, file a proof of claim on behalf of a creditor, move to value the collateral securing a claim or to avoid a lien pursuant to 11 U.S.C. § 522(f), modify the plan to provide for an omitted claim, or anything else needed to insure that the plan completes within its term, pays the promised dividend to creditors, and satisfies all the requirements of 11 U.S.C. §§ 1322 and 1325.

6. AIF complains that the trustee did not serve it with the Notice. However, nothing in the General Order requires the trustee to serve the Notice on creditors. The Notice is to assist the debtor in determining whether to object to claims, file claims on behalf of creditors, and/or modify the plan.

7. In a chapter 11 case, a sophisticated creditor might file a proof of claim demanding nothing if the debtor scheduled a debt as being owed to the creditor. If that debt is scheduled as undisputed, liquidated, and noncontingent, a proof of claim is deemed filed. 11 U.S.C. § 1111(a). Therefore, if the debtor owed nothing to the creditor, the creditor might conceivably file a proof of claim demanding nothing in order to avoid receiving an undeserved dividend. In a chapter 13 case, however, a proof of claim must be filed even if a claim is scheduled as undisputed, liquidated, and noncontingent. See note 5 above.

8. During oral argument of this motion, the trustee suggested only two instances when a creditor might file a proof of claim demanding nothing from the bankruptcy estate. First, when a creditor holds a long-term secured claim that is not in default on the date of the petition, the creditor may file a proof of claim stating the amount of the unmatured

In short, the trustee's interpretation of the proof of claim was unreasonable, particularly considering the fact that the debtors had scheduled the claim as undisputed, liquidated, and noncontingent and had filed their chapter 13 petition in order to pay AIF's claim in full.

The debtors doubtlessly considered themselves very lucky to learn that the trustee had processed AIF's claim as a demand for $0.00. This meant that the debtors would be completing their plan well in advance of its 60-month term.[9]

The debtors and their attorney, however, knew that their good fortune was undeserved. They were aware that AIF had filed a proof of claim and that the trustee had most likely misinterpreted it. This can be inferred from the following circumstances:

- AIF had gone through the trouble of filing a complaint in the debtors' prior chapter 7 case in order to prevent the discharge of its claim.

- The parties then negotiated a settlement that required payment in full of AIF's claim in this chapter 13 case.

- The debtors' counsel had corresponded with counsel for AIF the day before the filing of the chapter 13 petition, promising that the debtors would pay

AIF's claim in full via their chapter 13 plan.

- The debtors scheduled AIF's debt as undisputed, liquidated, and noncontingent.

- The trustee served the debtors and their attorney with the Notice of Filed Claims which reported the filing of AIF's proof of claim.

- The debtors completed their plan in less than 15 months, rather than the 60 months they expected.

Therefore, the court concludes that AIF filed a timely proof of claim demanding $15,000.00 on account of an unsecured loan it made to the debtors. While the debtors or the trustee may wish to object to this proof of claim in order to reduce it to $11,756.90, the amount of the nondischargeable judgment, the trustee erred when he assumed the claim was a demand for nothing. The trustee should have paid the claim in full as directed by the plan.

## II

The trustee's failure to pay AIF's claim in accordance with the plan should have come to light in connection with the case closing procedures which led to the approval of the trustee's final report and account and the issuance of the debtors' discharge. Instead, the case closing pro-

---

principal but also indicating that there are no arrears. See Official Form 10 (requiring secured claims to itemize the amount of prepetition arrears included in the total claim amount). If the chapter 13 plan does not modify such a secured claim and provides for the debtor to continue making post-petition contract payments directly to the secured creditor, such a proof of claim is sometimes interpreted as demanding nothing from the estate. Second, a creditor who has previously filed a proof of claim making a demand against the estate may thereafter file an amended proof of claim demanding $0.00 if the claim has been paid from a source other than the debtor or the estate, or if the original

claim was filed in error. This case is unlike either of these examples.

9. Without AIF's claim, it would take 13.993 months to complete the plan ($4,408.00 / $315.00 a month = 13.993 months). This is borne out by the trustee's final report and account filed on July 21, 2000. It indicates that the debtors paid $4,719.00 to the IRS and $450.08 in chapter 13 trustee compensation, for a total of $5,169.00. At $350.00 per month, it took the debtors 14.768 months to complete their plan. The slight discrepancy is due to the fact that the IRS filed a proof of claim for $311.00 more than the amount scheduled by the debtors.

cedures used by the chapter 13 trustee and approved by the court have only compounded the injustice to AIF. Without affording AIF prior notice and opportunity to object, the court approved the chapter 13 trustee's final report and account, gave the debtors their chapter 13 discharge, discharged the trustee from his duties, released the trustee and his sureties from any liability, and closed the case.

## A

The court may close a chapter 13 case once the estate has been fully administered. 11 U.S.C. § 350(a). Neither the Bankruptcy Code nor the Bankruptcy Rules define the phrase "fully administered." *Cf. Matter of Wade*, 991 F.2d 402, 406–07 (7th Cir.1993), *cert. denied., Wade v. Shook*, 510 U.S. 870, 114 S.Ct. 195, 126 L.Ed.2d 153 (1993); *In re Ground Systems, Inc.*, 213 B.R. 1016, 1019 (9th Cir. BAP 1997). Therefore, the contours of the phrase are shaped by the duties imposed on the chapter 13 trustee.

The Bankruptcy Code requires a chapter 13 debtor to file a plan and to begin making plan payments within 30 days after the commencement of the case. 11 U.S.C. §§ 1321 and 1326(a)(1). The debtor must submit plan payments, to the extent they are necessary for the execution of the plan, to the supervision and control of the trustee. 11 U.S.C. § 1322(a)(1). The Bankruptcy Code directs the trustee to insure that the debtor makes all plan payments. 11 U.S.C. § 1302(b)(5).

The trustee then retains the plan payments until confirmation or denial of confirmation. 11 U.S.C. § 1326(a)(2). If a plan is confirmed, the trustee must distribute the plan payments "in accordance with the plan as soon as practicable." *Id.* If not confirmed, the trustee must return the payments to the debtor after deducting any allowed and unpaid administrative expenses. *Id.*

The trustee is fully accountable for his or her control and supervision of the plan payments. 11 U.S.C. §§ 704(2) and 1302(b)(1). A failure to account for the payments, or distributions to creditors not entitled to dividends, may subject the trustee to personal liability. *See Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1415 (9th Cir.1985).

In a chapter 13 case with a confirmed plan, then, the trustee's primary duties are two-fold: collect the plan payments from the debtor and distribute those payments to creditors in accordance with the confirmed plan. After the completion of the plan, or after the dismissal or conversion of the case, and after the trustee has collected all payments from the debtor and distributed them to creditors in accordance with the plan,[10] the estate has

---

10. In some situations, the chapter 13 trustee will refund plan payments to the debtor rather than distribute them to the creditors. In the event of a post-confirmation dismissal, any undisbursed money belongs to the debtor, absent a court order to the contrary. 11 U.S.C. § 349(b)(3). *See Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1414 (9th Cir.1985).

If a debtor in a chapter 13 case, filed after October 24, 1994, converts the case in good faith to a case under chapter 7, the "property of the estate in the converted case shall consist of the property of the estate, as of the date of the filing of the petition, that remains in the possession of or under the control of the debtor on the date of conversion...." 11 U.S.C. § 348(f)(1). Assuming the reference to "property of the estate" in section 348(f)(1) is to the definition applicable to cases filed under chapter 7, 11 U.S.C. § 541, rather than the definition applicable to cases filed under chapter 13, 11 U.S.C. § 1306(a), undisbursed funds in the hands of the chapter 13 trustee on the date of conversion likely belong to the debtor rather than to the chapter 7 trustee. *See* Keith M. Lundin, *Chapter 13 Bankruptcy,*

been "fully administered." Of course, the trustee must prove that the estate has been fully administered before it can be closed.

## B

■ To prove that the chapter 13 estate has been fully administered, the chapter 13 trustee must prepare a final report and account ("final report"). 11 U.S.C. §§ 704(9) and 1302(b)(1); Fed. R. Bankr.P. 5009.

Neither the Bankruptcy Code nor the Bankruptcy Rules delineate the content of the trustee's final report. Surprisingly, the Office of the United States Trustee has not filled this void. The *Handbook for Chapter 13 Standing Trustees* published by the United States Trustee does not mandate a final report form or even include samples of recommended forms. *Handbook for Chapter 13 Standing Trustees*, U.S. Dept. of Justice, Executive Office for the United States Trustee, p. 9–7 (Dec. 1, 1998, amended March 1, 2001). The *Handbook* simply suggests that the final report should "show all receipts from the debtor and all disbursements made to each creditor." *Id.; see also* Fed. R. Bankr.P. 2015(a)(2) and (c).

■ The minimal showing suggested by the United States Trustee is not sufficient to demonstrate that the estate has been fully administered. In addition to including the trustee's receipts and disbursements, the final report must also inform parties in interest whether the debtor has made all plan payments and whether the trustee has paid all claims in accordance with the plan. This information is

necessary because, as noted above, the Bankruptcy Code requires that the trustee do more than just account for the money flowing in and out of his custody. The Bankruptcy Code charges the trustee with insuring that the debtor makes all payments required by the plan and with disbursing those payments to creditors in accordance with the plan. 11 U.S.C. §§ 1302(b)(5) and 1326(a).

Therefore, a summary of receipts and disbursements will be meaningless if summaries of the plan and the proofs of claim filed by·creditors do not accompany it. A summary of the proofs of claim will identify the creditors eligible to receive a distribution. A summary of the plan will disclose what the debtor should have paid to the trustee and what creditors should have received from the trustee. With this information, a creditor can determine whether it and the other creditors have received from the trustee what the debtor promised in the plan and whether the debtor is entitled to a discharge.

A review of the final report in this case reveals that it does not contain a summary of the plan. That is, while it details the receipts, disbursements, and filed claims, including their amount and classification, the final report does not summarize what each claim, or class of claims, had to receive under the terms of the plan.

However, this deficiency is not the genesis of the problem in this case. AIF was aware that it was entitled to a 100% dividend. This case went off track because no one served the final report on AIF before the court approved it and the debtors received their discharge.[11] Had someone

---

§ 316.1, p. 316.1—316.9 (3d ed.2000). This is because plan payments are usually paid from the debtor's post-petition earnings which are not property of the estate in a chapter 7 case. *Id.*

**11.** The final report in this case indicates that AIF had not filed a proof of claim. It states "CLAIM NOT FILED." This contradicts the trustee's Notice of Filed Claims which reports that AIF filed a proof of claim on January 19, 1999 in the amount of $0.00. Nonetheless,

served it, AIF would have had an opportunity to point out to the trustee that he had misinterpreted its proof of claim and to demand payment in full in accordance with the plan.

### C

■ It is vital to the accuracy of the final report that the debtor and creditors be served with it before the court approves it, discharges the debtor's liability for prepetition claims, and discharges the trustee from his duties. The debtor knows what he has paid to the trustee and can object if the trustee has not accounted for all payments. Creditors know whether and how much the trustee has paid them and they will be motivated to object if the trustee erroneously reports that he has paid their claims in accordance with the plan.

In other words, a final report approved without notice to the debtor and creditors prevents the two most informed and motivated constituencies from serving as a check on the trustee's administration of the estate.

For that reason, it is surprising that the Bankruptcy Code and Bankruptcy Rules are not more explicit in their requirement that the final report be served on the debtor and creditors before the court approves it. For instance, Fed. R. Bankr.P. 2002 contains nothing regarding service of a final report in a chapter 13 case. Rule 2002(f)(8) requires service to the debtor and creditors only "of the trustee's final report in a chapter 7 case if the net proceeds realized exceed $1,500." Nor does 11 U.S.C. § 350(a) require notice and a hearing prior to the closing of a case.

Fed. R. Bankr.P. 5009, however, requires notice, at least inferentially. Rule 5009 specifies that "in a ... chapter 13

case [when] the trustee has filed a final report and has certified that the estate has been fully administered, and [when] within 30 days no objection has been filed by the United States trustee or a party in interest, there shall be a presumption that the estate has been fully administered."

If parties in interest have the right to object to the final report, someone must serve them with it. A right to object that is not coupled with prior notice of the final report effectively eliminates that right and robs the process of a vital control. *See Handbook for Chapter 13 Standing Trustees*, U.S. Dept. of Justice, Executive Office for the United States Trustee, p. 6–12 (Dec. 1, 1998 as amended March 1, 2001) (recognizing that service of the final report on creditors is "an additional internal control measure," but erroneously suggesting that such service is optional).

In this case, no one served the debtors, AIF, or the remaining creditors with the trustee's final report. The court nonetheless approved it, discharged the debtors, and discharged the trustee from his responsibilities. This was a mistake. The consequences of the court's mistake are discussed below.

### D

If the purpose of the final report in a chapter 13 case is to insure that the trustee has fully administered the estate, and if payment of claims in accordance with the plan is an element of administering the estate, one would expect the court to issue the debtor's discharge after it approves the final report. *See e.g., Cisneros v. United States (In re Cisneros)*, 994 F.2d 1462, 1464 (9th Cir.1993) (where the court relied on the trustee's final report in issuing a discharge); *In re Bergolla*, 232 B.R.

had the final report described AIF's claim in either fashion and had it been served on AIF,

AIF would have had an opportunity to challenge the trustee's failure to pay its claim.

515, 516 (Bankr.S.D.Fla.1999) (where the debtors filed a motion to compel the trustee to issue her final report "so the Debtors could obtain their discharge"). Logic suggests that the entry of a chapter 13 discharge, like approval of the final report, hinges upon a showing that claims were paid in accordance with the plan.

Logical or not, the debtors maintain that this proposition goes beyond what is required by the Bankruptcy Code. They point out that section 1328(a), unlike the directive to the trustee in section 1326(a)(2) to distribute plan payments "in accordance with the plan," requires only the "completion of plan payments." 11 U.S.C. §§ 1326(a)(2) and 1328(a). According to the debtors, then, once they have made all plan payments to the trustee, the court should enter a discharge even if those payments are insufficient to pay claims in accordance with the plan and the court is unable to approve the trustee's final report.

■■■ The debtors are not correct. While section 1328(a) calls for a chapter 13 discharge on "the completion by the debtor of all payments under the plan," those payments must have been sufficient "to do what the plan proposes." *Matter of Escobedo*, 169 B.R. 178, 179 (Bankr.N.D.Ind. 1993), *affirmed*, 28 F.3d 34 (7th Cir.1994). *See also In re Delmonte*, 237 B.R. 132, 137 (Bankr.E.D.Tex.1999); *In re Rivera*, 177 B.R. 332, 333 (Bankr.C.D.Cal.1995). That is, to obtain a discharge, a debtor must have done more than make all of the plan payments. Those payments must also have been sufficient to pay claims as the plan requires. *See Matter of Carr*, 159 B.R. 538, 539 (D.Neb.1993) (where the court did not enter the debtor's discharge even though he made the required 36 monthly plan payments because those payments were insufficient to pay priority

claims in full as the plan and 11 U.S.C. § 1322(a)(2) mandated).

■■■ In the context of a chapter 13 case where the debtor has made all of the plan payments, the debtor is entitled to a discharge if those payments permitted the trustee to pay claims "in accordance with the plan." The approval of the final report, then, signals to the court that it is appropriate both to discharge the debtor and close the estate because it has been fully administered.

E

■■■ Conditioning a chapter 13 discharge on the approval of a final report may result in a significant lag between the debtor's last plan payment and the entry of a discharge. This delay could exceed 90 days after the trustee mails the last dividend checks to creditors because 11 U.S.C. § 347(a) requires him to wait 90 "days after the final distribution under section ... 1326" before stopping payment on uncashed checks. After stopping payment on any uncashed check, the trustee must pay the unclaimed funds to the court for disposition under 28 U.S.C. §§ 2041 *et seq.* Until this process is complete, the trustee cannot file the final report.

Thus, if the discharge becomes dependent on the approval of the final report, the court may not enter the discharge until several months after the debtor makes the last plan payment. This may prompt the debtor to argue that the court is not minding the directive in section 1328(a) to issue a discharge "as soon as practicable."

It deserves mention, however, that any delay in processing the debtor's discharge pales in comparison to the delay inflicted upon the debtor's creditors throughout the chapter 13 case. While the debtor is performing the plan, the automatic stay temporarily enjoins creditors from enforcing their claims against the debtor. *See 11*

U.S.C. § 362(a). After the debtor makes the last plan payment, he or she may be eligible for a chapter 13 discharge that permanently enjoins creditors from enforcing most pre-petition claims against the debtor. 11 U.S.C. § 524(a)(2). Before the court concludes that it should close the case and discharge the debtor, creditors are entitled to the benefit of a process assuring them that the debtor has paid, and they have received, what the plan requires. Waiting until this process has run its course is, from the perspective of the creditors, issuing the discharge as soon as practicable.

In the past, in order to avoid delay, this court has permitted the trustee to file a "Notice of Plan Completion" and then issued the debtor's discharge without waiting for the approval of the trustee's final report. *See* 3 Keith M. Lundin, *Chapter 13 Bankruptcy*, § 343.1, p. 343–1 (3d ed. 2000) ("In a few jurisdictions, the debtor or the trustee causes entry of the discharge order by filing a notice of completion of payments or a motion for entry of discharge."). *See also Handbook for Chapter 13 Standing Trustees*, U.S. Dept. of Justice, p. 6–12 (Dec. 1, 1998 as amended March 1, 2001).

The Notice of Plan Completion indicates that, in the opinion of the trustee, the debtor has completed the plan and deserves a discharge. For example, the Notice of Plan Completion filed in this case stated:

> The Standing Trustee herein represents that the plan payments in the 60 month, 100% plan proposed by the debtor herein and as confirmed by the Court has been completed by the debtor and all plan distributions required to be disbursed by the Standing Trustee have been made. The debtor should be granted a discharge.

> Therefore, the Standing Trustee requests the Court enter a discharge order pursuant to 11 USC 1328(a).

Typically, the court enters the debtor's discharge the same day the trustee files the Notice of Plan Completion. Thereafter, the trustee files the final report and, upon its approval, the court closes the case.

This procedure has three problems.

First, labeling the Notice of Plan Completion a "notice" is an euphemism because the trustee does not serve it on any creditors.

Second, even if someone served it on creditors, they do not have the opportunity to contest the trustee's naked assertion that the debtor completed the plan and is entitled to a discharge. Instead, the court enters a discharge as soon as the trustee files the notice.

Third, even if someone served the Notice of Plan Completion on creditors and they had an opportunity to contest it before the court entered the discharge, it includes no specific facts for the creditors to contest. The Notice of Plan Completion does not include summaries of the plan, the proofs of claim, and the trustee's receipts and disbursements. In short, it is impossible to determine from the notice whether creditors have received from the trustee what the debtor promised in the plan and whether the debtor is entitled to a discharge. Compelling creditors to contest the Notice of Plan Completion is like requiring a defendant to answer a complaint even though it contains only a caption and a prayer for relief.

In the future, before this court will issue a chapter 13 discharge, the trustee must serve the debtor, creditors, and the United States Trustee with a copy of his proposed final report along with a notice that these parties in interest have 30 days to object

to it. *See* Fed. R. Bankr.P. 5009. The court will entertain any objection indicating that the chapter 13 estate has not been fully administered, including objections that the debtor has failed to make the payments promised in the plan, the trustee has failed to pay claims in accordance with the plan, or the debtor has not otherwise completed the plan.

The trustee must mail the final report and notice 33 days before the deadline for filing objections. Fed. R. Bankr.P. 9006(f). The trustee shall set any objections for hearing in accordance with Local Bankruptcy Rule 9014–1. If no one files an objection, or after the court overrules any objection, the court will approve the final report and then issue the debtor's discharge.

These requirements cannot be satisfied by utilizing the current Notice of Plan Completion procedure described above.

In appropriate circumstances, the court will entertain a motion by either the debtor or the trustee requesting the entry of a discharge prior to the approval of the final report. The motion must be served on all parties in interest and set for hearing pursuant to Local Bankruptcy Rule 9014–1. If the approval of the final report will be unduly delayed and the debtor has a legitimate need for the early entry of a discharge, and provided the motion also demonstrates that the debtor has made all plan payments and that all claims have been paid in accordance with the plan, the court may enter the discharge in advance of the final report's approval.

This is not an invitation to file such a motion in every case. Rather, the court expects that the trustee's customary efficiency will make a motion unnecessary in all but a few cases.

**F**

In this case, because the trustee misinterpreted AIF's proof of claim as making no monetary demand against the estate, he erroneously concluded that the debtors had completed their plan after making approximately 15 monthly payments. Hence, on June 28, 2000, the trustee filed a Notice of Plan Completion. However, the trustee did not serve the notice on AIF or any other creditor. Despite the lack of notice, the court issued a discharge order on June 28, 2000 and entered it on the docket on June 30, 2000.

The trustee's failure to serve a copy of the final report on AIF or anyone else further compounded these errors. The trustee filed the final report on July 21, 2000 and the court issued a final decree three days later. Without prior notice to AIF, the final decree discharged the trustee, released the trustee and his sureties from any liability, and closed the case.

Despite filing a timely proof of claim, then, AIF did not receive payment of its claim as the debtors promised in their plan. Payment of AIF's claim was a condition to the debtors' chapter 13 discharge and to the closing of the case. Nonetheless, the court erroneously issued a discharge and closed the case even though AIF did not have an opportunity to complain that it had not been paid. While the court served the discharge order on AIF, this did not cure the failure to give AIF the opportunity to prevent its entry.

**G**

AIF's remedy is dictated by *Cisneros v. United States (In re Cisneros),* 994 F.2d 1462 (9th Cir.1993). In *Cisneros,* the debtors confirmed a chapter 13 plan providing monthly payments of $4,320.00 for 53 months. The plan directed the trustee to pay $3,388.00 of each monthly payment to the IRS. The IRS filed a time-

ly proof of claim but the court clerk failed to give a copy of it to the chapter 13 trustee. As a result, the trustee did not disburse any of the plan payments to the IRS. After the debtors had made 16 monthly plan payments, the trustee filed a final report, representing that all creditors that had filed proofs of claim had received payment in accordance with the plan. The court thereafter entered a discharge even though no one served the IRS with the final report, nor gave it notice of the court's intent to discharge the debtors.

Almost immediately after the court entered the discharge, the debtors advised the IRS of their discharge. The IRS took the position that the court should not have granted the discharge because its filed claim had not been paid in accordance with the plan. Approximately eight months after entry of the discharge, and after attempting to resolve the matter informally with the debtors, the IRS moved the bankruptcy court to vacate the discharge order pursuant to Fed.R.Civ.P. 60(b)(1) as incorporated by Fed. R. Bankr.P. 9024. That is, the IRS asked the bankruptcy court to vacate the discharge because it was based on the mistaken finding that all creditors with proofs of claim on file had· received payment in full. The court granted the motion over the debtors' objection.

In affirming the bankruptcy court, the Ninth Circuit rejected the argument that Rule 60(b)(1) could not be used to vacate a chapter 13 discharge because 11 U.S.C. § 1328(e) permits the revocation of a chapter 13 discharge only if it is procured through the debtor's fraud. The court held:

> We cannot agree with the Debtors' analysis. To begin, we note that it is by no means apparent why the Debtors should be permitted to invoke any rights established by section 1328(e) given that they never satisfied the statutory requirements for earning such rights. Section 1328(a) mandates the granting of a 'full compliance' discharge 'after completion by the debtor of all payments under the plan....' The Debtors have not met this condition, and so cannot claim any right to the discharge granted them. The bankruptcy court is, after all, a court of equity, and it strikes us as anomalous in this context to say that the Debtors have a right to retain that which they had no right to receive in the first place. [Footnote omitted.]
>
> More to the point, the Debtors have suggested no reason to believe that Congress intended section 1328(e) to prevent the bankruptcy court from correcting its own mistakes. That this section specifies that a discharge may be revoked 'only' for fraud may be explained, we think, as a means of emphasizing that other grounds for revocation—whether general equitable principles or some reason set forth in section 727(d), which governs revocation of a discharge granted in a Chapter 7 proceeding—are not to be imported into the Chapter 13 context.

*Cisneros*, 994 F.2d at 1465–66.

The Ninth Circuit also concluded that the bankruptcy court had made a mistake of fact when it entered the discharge order.

> We acknowledge that the problems that have arisen in this case are ultimately attributable to the failure of the Trustee to learn that the IRS had filed a proof of claim. For present purposes, however, this is immaterial. The order of discharge was entered by the bankruptcy court under a misapprehension as to the facts of the case. Had the court been apprised of the actual facts, it would never have entered the order. In our view, this is precisely the sort of 'mis-

take' or 'inadvertence' that Rule 60(b) was intended to reach. *Cisneros,* 994 F.2d at 1467.

This court made the same mistake in this case. It entered the debtors' discharge based on a mistake of fact—that all creditors with timely proofs of claim on file had received payment in accordance with the plan. Further, AIF did not have an opportunity prior to the entry of the discharge to demonstrate that the debtors were not entitled to a discharge.

Like the debtors in *Cisneros,* the debtors in this case maintain that AIF is not entitled to any relief because it failed to file its motion within a reasonable time. A motion pursuant to Rule 60(b)(1) must be made "within a reasonable time, and . . . not more than one year after the . . . order . . . was entered or taken."

In *Cisneros,* the debtors and the IRS unsuccessfully attempted to resolve their dispute informally for approximately two months following the entry of the discharge order. Even though efforts at settlement soon failed, the IRS waited approximately 8 months after the discharge to file its motion. The debtors maintained that the IRS had not explained this lengthy delay. The Ninth Circuit nonetheless concluded that the IRS made the motion within a reasonable time because "no intervening rights [had] become vested in reliance on the order" and "the delay had

caused the Debtors no prejudice, while a failure to grant the motion to reopen would have been highly prejudicial to the government." *Cisneros,* 994 F.2d at 1467.

This case is not significantly different. As noted above, the court served AIF with the discharge order it issued on June 28 and entered on June 30, 2000. On September 29, 2000, AIF filed and served on the debtors and their original attorney a notice that it would be filing a motion to set aside the discharge order. Before AIF filed the motion, its counsel "attempted to resolve the outstanding issues with" the debtors' original attorney. The attempt was not successful and AIF filed this motion on June 27, 2001, three days shy of the one-year anniversary of the entry of the discharge order.

Thus, after the court entered the discharge, AIF promptly asserted that the discharge was premature and indicated that it would file this motion. The debtors were not caught unaware, and apart from the fact that they will have to pay AIF's claim, the debtors have proven no prejudice that is likely to befall them if the court grants AIF's motion.[12] Nor have they shown that any intervening rights have vested in reliance on the discharge order. The prejudice to AIF, on the other hand, is significant. AIF will receive nothing and will lose its claim.

---

**12.** At the final hearing on the motion, counsel for the debtors requested leave to file additional evidence on this point. The court denied the request. AIF brought this motion pursuant to Rule 60(b)(1) which necessarily requires the court to consider any prejudice likely to befall the debtors if their discharge is vacated. *See Cisneros,* 994 F.2d at 1467. Thus, the debtors were on notice that undue prejudice was a defense to the motion. Even so, they filed no evidence of prejudice in their initial opposition. If such evidence was available, they have failed to explain why they did

not present that evidence in the first instance. Nor have the debtors made a showing that evidence of undue prejudice was unavailable, with exercise of due diligence, in time to be presented with their initial opposition.

While the court continued the hearing twice and permitted both parties to present additional evidence and briefing, the court did this to allow the parties to address the impact of Rule 5009 on the relief requested, an issue the court raised at the first hearing on the motion. The court did not reopen the evidentiary record on other issues.

Given these circumstances, the court concludes that AIF filed its motion to vacate the entry of the debtors' discharge within a reasonable time.

The court will grant AIF's Rule 60(b)(1) motion.

## H

One more issue remains. On July 24, 2000, the clerk issued a final decree on behalf of the court approving the trustee's final report. The final decree, which was prepared and lodged by the trustee, also provided:

> IT IS FURTHER ORDERED that L.J. Loheit is hereby discharged as Trustee of the above named Debtor(s) and he and the sureties on his bond are released from any and all liability.

The court must vacate the final decree because the trustee had not fully administered the estate. That is, the debtors had not paid AIF's claim in accordance with *their plan and the court should not have* approved the trustee's final report.

If the trustee had fully administered the estate, the court would still modify the final decree. The release of the trustee and his sureties from any liability was inappropriate. Section 350(a) permits the court to discharge the trustee from his duties only after the estate is fully administered. 11 U.S.C. § 350(a). It does not permit the court to discharge the trustee and his sureties from any liabilities arising out of the trustee's administration of the estate.

The trustee is a fiduciary who holds the debtor's property for the benefit of creditors. Daniel B. Bogart, "Finding the Still Small Voice: The Liability of Bankruptcy Trustees and the Work of the National Bankruptcy Commission," 102 *Dick. L.R.* 703, 709–27 (1998). This fiduciary relationship imposes on the trustee duties of care, loyalty, and impartiality.

*Id.* If the trustee breaches any of these duties, he may incur personal liability to creditors or the debtor. *See e.g., In re Nash,* 765 F.2d at 1415; *In re Rollins,* 175 B.R. 69 (Bankr.E.D.Cal.1994). By issuing a final decree that absolves the trustee of any potential liability arising from a breach of his fiduciary duties as a matter of routine and without notice, the court is effectively eliminating those fiduciary duties.

To give such a release also contradicts 11 U.S.C. § 322(d), which gives parties in interest two years from the discharge of the trustee to file a proceeding on the trustee's bond.

## III

This court concludes that AIF filed a timely proof of claim. While that proof of claim was not a model of clarity and completeness, it did not, as the trustee suggested, demand $0.00 from the estate. It demanded payment in full of an unsecured claim. If the proof of claim was ambiguous or vague regarding its amount or classification, the trustee or the debtors should have objected to it. They were not free to ignore it and not pay it.

The debtors' chapter 13 plan required them to pay AIF's claim in full. They paid nothing. Despite this, the trustee informed the court that the debtors had made their plan payments and that he had paid creditors in full and in accordance with the plan. Based on these representations, the court granted a chapter 13 discharge. Because the court was mistaken when it concluded that the trustee had paid AIF's claim in full and in accordance with the plan, the court must vacate the debtors' discharge.

A separate order will be entered.