**In re Alejandro and Lourdes ESTRADA, Debtors.**

No. 04–30958–A–13G.

United States Bankruptcy Court,
E.D. California,
Sacramento Division.

March 7, 2005.

---

Mark A. Wolff, Esq., Wolff & Wolff, from Elk Grove, CA, for debtors Alejandro and Lourdes Estrada.

Elaine Crozier, Esq., from Sacramento, CA, for chapter 13 trustee Russell D. Greer.

**MEMORANDUM DECISION**

MICHAEL S. MCMANUS, Chief Judge.

The chapter 13 debtors, Alejandro and Lourdes Estrada, move for entry of their discharge on the ground that they have completed their plan payments. Their motion will be granted.

## I

The debtors' chapter 13 plan obligated them to pay a total of $19,950 to the trustee for the benefit of their creditors. This amount was to be paid in 42 monthly installments of $475. Their first plan payment was due in November 2000 and, assuming all subsequent payments were tendered when due, the debtors' last plan payment should have been paid in April 2004.

The debtors made all of their plan payments. Indeed, instead of 42 monthly installments of $475, they made 43 such payments.

The overpayment was apparently prompted by the trustee's slight miscalculation of the dividend due general unsecured creditors. Rather than receive a 10.78% dividend (a gross amount of $7,355.17) as calculated by the trustee, general unsecured creditors were entitled to only a 9.28% dividend (a gross amount of $6,333.70). To pay the $1,019.47 difference, the trustee took the position that the debtors would have to pay a 43rd and 44th monthly installment of $475 and a final installment of $69.47.

The debtors made the 43rd monthly plan payment and then realized the trustee's error and made no further payments. This motion followed, although not before the trustee had disbursed the extra plan payment to creditors. As a result, the trustee is not now able to file his final report and account. He must first recover the $475 erroneously paid to creditors and then refund it to the debtors.

Even though the trustee is not now in a position to file and serve his final report

and account, the court will grant the debtors' discharge. This motion demonstrates that all plan payments have been paid and that all dividends promised by the plan have been paid in full.

## II

■ In *In re Avery*, 272 B.R. 718 (Bankr.E.D.Cal.2002), this court determined that, as a matter of routine, it would not enter a chapter 13 discharge until after the trustee's final report and account had been approved. The court held:

> If the purpose of the final report in a chapter 13 case is to insure that the trustee has fully administered the estate, and if payment of claims in accordance with the plan is an element of administering the estate, one would expect the court to issue the debtor's discharge after it approves the final report. *See e.g., Cisneros v. United States (In re Cisneros)*, 994 F.2d 1462, 1464 (9th Cir. 1993) (where the court relied on the trustee's final report in issuing a discharge); *In re Bergolla*, 232 B.R. 515, 516 (Bankr.S.D.Fla.1999) (where the debtors filed a motion to compel the trustee to issue her final report "so the Debtors could obtain their discharge"). Logic suggests that the entry of a chapter 13 discharge, like approval of the final report, hinges upon a showing that claims were paid in accordance with the plan.

*In re Avery*, 272 B.R. at 728–29.

The debtors in *Avery* argued that because section 1328(a) requires only the "completion of plan payments" as a prerequisite to a discharge, the court was required to enter a discharge even if plan payments were insufficient to permit the trustee to pay claims in accordance with the plan.

The court rejected this argument. Instead, it concluded that a chapter 13 debtor "is entitled to a discharge only if ... [the plan] payments permitted the trustee to pay claims 'in accordance with the plan.'" *In re Avery*, 272 B.R. at 729. After all, the debtor's payments to the trustee and the trustee's payments to creditors are obviously related.

If the trustee has been able to pay all dividends promised by the plan, the debtor must have made all plan payments. The final report and account may be approved and the discharge entered.

■ If the trustee has not paid claims in accordance with the plan, either the debtor did not make all plan payments necessary to fund the promised dividends, or the debtor made the necessary plan payments but the trustee failed to disburse them in accordance with the plan. In the former case, it is premature to enter a discharge or approve the final report and account. In the latter, the debtor is entitled to a discharge even though approval of a final report and account must await the trustee's corrective action.

■ This might require, in instances where the trustee has failed to disburse funds on hand to creditors, that he distribute those funds. In a case where the trustee pays a dividend in excess of what the plan requires, the trustee must recover the overpayment and then redistribute it to the correct creditor(s) or refund it to the debtor. If the trustee cannot recover the overpayment, he may have to dig into his own pocket and make good the misdirected plan dividend. *See Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1415 (9th Cir.1985).

In the hopefully rare instance where a debtor has paid the amounts required by the plan and fully funded the promised dividends but the trustee has not paid those dividends, there is no need to delay the debtor's discharge until the trustee has

taken the appropriate corrective action. One way or another, the trustee will pay the dividends required by the plan.

In this case, the error made by the trustee in administering plan payments came to light before the trustee had filed and served a proposed final report and account. Even without the final report and account, however, it is clear that all plan payments have been made by the debtors and were sufficient to fund the dividends promised by the plan. The trustee collected too much money from the debtors and the overpayment must be recovered and returned to them.

In *Avery*, this court acknowledged that "in appropriate circumstances," it would enter a discharge prior to approval of a final report and account. *See In re Avery*, 272 B.R. at 731. This case presents an appropriate circumstance.[1]

The debtors' motion was served on the trustee and all creditors. It is supported by evidence establishing that they have completed their plan payments and that those payments were sufficient to fund the dividends promised to creditors. These facts have not been controverted. The only problem is that the trustee collected $475 more than necessary and distributed that amount to general unsecured creditors. He acknowledges that the overpayment must be recovered and refunded to the debtors. When this is done, he will file and serve his final report and account. Under the circumstances, there is no reason to delay a discharge until that final report and account is approved.

### III

This court's practice of entering chapter 13 discharges in connection with its approval of final reports and accounts has been criticized in *In re Green*, 321 B.R. 725 (Bankr.D.Nev.2005). That court held that a chapter 13 discharge should not be linked to the approval of the trustee's final report and account. This court respectfully disagrees.

### A

Determining whether a debtor has made "all payments under the plan" entails more than counting the number of monthly payments remitted by the debtor to the trustee. *See* 11 U.S.C. § 1328(a).

A plan must provide for payment in full of all priority claims. *See* 11 U.S.C. § 1322(a)(2). If the debtor proposes to retain a creditor's collateral, the plan must provide for payment of the present value of that collateral. *See* 11 U.S.C. § 1325(a)(5)(B). And, the plan must pay holders of unsecured claims no less than the present value of what "would be paid on such claim[s] if the estate of the debtor were liquidated under chapter 7 ..." and perhaps more if there is available disposable income. *See* 11 U.S.C. § 1325(a)(4) & (b).[2]

Ideally, a plan will not be confirmed unless the stream of payments to be contributed by the debtor will be sufficient to

---

**1.** When the court decided in *Avery* to require a motion in those instances where the trustee or the debtor seek a discharge in advance of the approval of the final report and account, it mentioned that it was not inviting such motions in every case. *In re Avery*, 272 B.R. at 731. In the three years since *Avery* was decided, this is only the fifth motion for a discharge that has been heard by the court.

As expected, "the trustee's customary efficiency" has made a motion unnecessary in all but a handful of cases. *Id.*

**2.** Of course, a debtor is not required by section 1325(b) to contribute all disposable income for a minimum of 36 months absent an objection by the trustee or an unsecured creditor.

fund these dividends. However, confirmation of a plan is no assurance that the plan payments will actually fund these dividends. This is because confirmation of the plan frequently occurs before the deadline for filing proofs of claim. As a result, the plan may underestimate the amount owed on secured or priority claims.

So, for example, if the plan provides for payment in full of a priority claim on the assumption that it totals $5,000 but the priority claimant files a proof of claim demanding $50,000, the payments made by the debtor are unlikely to be sufficient to pay the priority claim in full.

Should the debtor in this example get a discharge merely because he or she has made the precise number of monthly payments required by the plan? Or, should the discharge be entered only when the debtor has paid the priority claim in full as promised by the plan and as required by section 1322(a)(2)?

This is but one example of the many situations that may arise in which completion of the monthly plan payments will not result in the payment of the dividends required by the Bankruptcy Code and promised in the plan. This problem may also arise when the debtor's attorney's fees are higher than projected, administrative expenses are incurred, post-petition claims are filed pursuant to 11 U.S.C. § 1305, or larger than expected secured claims are filed.

Recognizing that confirmation of a plan prior to the expiration of the bar dates for filing proofs of claim may mean that the payments into the plan will not fund the dividends required by the plan and the Bankruptcy Code, the court's general order on chapter 13 practice includes a procedure to harmonize the plan with the claims actually filed. This procedure is triggered by a Notice of Filed Claims prepared and served by the trustee after the bar dates for filing claims has expired. *See In re Kincaid,* 316 B.R. 735 (Bankr. E.D.Cal.2004) (explaining the Notice of Filed Claims procedure in detail). This notice informs the debtor, in light of the claims actually filed, whether or not the plan payments will be sufficient to fund the promised dividends. With the information regarding the filed claims, the debtor may attack claims by objecting to them, valuing collateral, or moving to avoid liens pursuant to 11 U.S.C. § 522(f). If attacking claims is unwarranted or unsuccessful, the debtor may modify the plan in order to provide for claims as filed.

The Notice of Filed Claims procedure may account for the low incidence of cases in which debtors have found it necessary to move for entry of a discharge prior to the approval of a final report. Because every debtor is told long before the scheduled end of the plan whether or not claims will receive the dividends required by the plan and the Code, a timely objection and/or motion will usually salvage the plan and the debtor's discharge.

Despite the Notice of Filed Claims procedure, there will be the occasional case where the plan's insolvency is not apparent until very late in the case. For instance, after the Notice of Filed Claims has been prepared and served, a creditor holding a priority or secured claim may amend its proof of claim to increase the amount demanded, a post-petition claim may be filed, or the debtor may incur additional attorney's fees. In a case such as these, despite the trustee's and the debtor's best efforts to avoid the problem, the plan payments may not fund the promised dividends.

Also, even when the Notice of Filed Claims indicates that the plan will not pay out the required dividends, the debtor may fail to address the problem.

In *Kincaid*, for instance, the debtors' plan required that a secured claim be paid in full. To accomplish this, the debtors promised to pay $300 a month for 42 months, a total of $12,600. The debtors made all of these payments. However, the claim filed by the creditor exceeded $12,600. The Notice of Filed Claims alerted the debtors to this problem. Rather than amend their plan to increase the plan payments in order to pay the secured claim in full, the debtors objected to the claim. Their objection was ultimately dismissed. By the time of the dismissal, the debtors had made their 42nd plan payment and so could no longer modify their plan. *See* 11 U.S.C. § 1329(a). As a result, the claim was neither disallowed nor paid in full as promised by the plan. The debtors did not receive a discharge. Instead, their petition was dismissed.

If the entry of a discharge was dependent only upon making 42 monthly payments of $300, the debtors in *Kincaid* should have received a discharge. But, they did not receive a discharge because their payments did not permit payment of all dividends promised by their plan and required by 11 U.S.C. § 1325(a)(5)(B).

In short, even with the Notice of Filed Claims procedure in place, there is no guarantee that making all plan payments will fund all dividends.

It is the payment of those dividends that is crucial, both to confirmation of the plan and the debtor's discharge. Just as the plan will be confirmed only if the promised dividends will satisfy the requirements of 11 U.S.C. §§ 1322(a)(2) and 1325(a)(4), (a)(5), and (b), a discharge will be granted only if those dividends are actually paid. If this is incorrect and we can ignore whether the dividends required by the terms of the plan were paid when it comes time to hand out the discharge, we may as well confirm the plan without regard to its compliance with sections 1322(a)(2) and 1325(a)(4), (a)(5), and (b).

■ This court again concludes that the reference to the completion of "payments under the plan" in section 1328(a) is not simply to the payments paid over to the trustee by the debtor. It also refers to payments to creditors that are funded by the debtor's plan payments. Therefore, in most cases, the approval of the trustee's final report and account and the granting of the debtor's discharge will be inextricably linked.

In situations such as the case now before the court, where administrative issues will delay approval of the final report and account, the court will permit the debtor or the trustee to move for entry of the discharge provided the record establishes that the debtor has made all plan payments and the trustee has paid all dividends promised by the plan.

### B

The court in *Green* instructed the trustee to "certify" to the court that he believed all payments had been made by the debtor. *In re Green*, 321 B.R. at 728. This certification would be unrelated to, and in advance of, the trustee's final report and account and could be made without notice to creditors or anyone else. "[To] protect himself from certifying a case for a discharge erroneously," however, the court gave the trustee the option of noticing creditors of his intention to make the certification and giving them an opportunity to object. Whether made with or without notice, the certification was to be timed such that the court could enter a chapter 13 discharge within 30 to 45 days of the last plan payment by the debtor.

It will be a stout-hearted trustee who makes such a certification without notice to creditors. If the trustee makes the

certification without notice and the debtor is discharged, and then the trustee discovers in connection with the preparation and approval of the final report and account that all payments have not been made, the trustee could be required to make up the shortfall. The debtor, discharge already in hand, has no reason to cooperate and make further payments.

Even when notice of the certification is given, that notice will not include much in the way of specific (and possibly accurate) financial information because it is likely to be prepared prior to the trustee's final report and account. If the trustee's derived or quasi-judicial immunity is dependent on making full and accurate disclosure of relevant facts, it is difficult to imagine that giving such a notice would provide much protection. *See Curry v. Castillo (In re Castillo),* 297 F.3d 940 (9th Cir.2002); *In re Rollins,* 175 B.R. 69 (Bankr.E.D.Cal.1994).

The better alternative is to serve the final report and account, see if there are objections, resolve any objections, and then approve the final report and account and enter a discharge. In the vast majority of cases, there will be no delay of consequence. In those few instances [3] where the final report and account cannot be approved expeditiously for reasons that do not warrant delaying the entry of a discharge, such as the failure of a creditor to cash a dividend check [4] or, as in this case, the need to recover a small overpayment to creditors, the discharge can be requested by motion.

## IV

For these reasons, the court declines the opportunity to change or modify its chapter 13 discharge procedure. It provides a chapter 13 debtor with a discharge as soon as practicable after the completion of payments under the plan. *See* 11 U.S.C. § 1328(a).

In this case, a minor problem caused by the distribution of too much money to creditors will delay approval of the trustee's final report and account. While this problem is easily rectified, there is no reason to delay entry of the debtors' discharge. They have made all of their monthly payments to the trustee and those payments have permitted the trustee to pay all dividends promised in the chapter 13 plan.

Separate orders granting the motion and the discharge will be entered.

---

**3.** *See* footnote 1.

**4.** 11 U.S.C. § 347(a) requires the trustee to wait 90 "days after the final distribution under section ... 1326" before stopping payment on uncashed checks. After stopping payment on any uncashed check, the trustee must pay the unclaimed funds to the court for disposition under 28 U.S.C. § 2041 *et seq.* Until this process is complete, the United States Trustee will not permit the chapter 13 trustee to file a final report and account.

For the 12–month period ending February 28, 2005, all chapter 13 trustees in this district paid into the court's unclaimed funds account 518 dividend checks in 517 cases. Over the same period, 5,733 cases were closed. Thus, if it is assumed that creditors failed to cash checks only in those cases about to close, the maximum delay in issuing a discharge and closing a case occurred in 9% of the 5,733 cases. This worst case scenario, however, overstates the likelihood of a discharge being delayed by an uncashed check because a discharge is not entered in every case that is closed. In many chapter 13 cases, approximately 65% of them, the debtor does not receive a discharge.