In re James M. KINCAID and Estrella A. Kincaid, Debtors.

No. 01–22358–A–13J.

United States Bankruptcy Court, E.D. California, Sacramento Division.

Oct. 8, 2004.

Jan P. Johnson, Sacramento, CA, Chapter 13 Trustee.

R. Craig Iseley, Esq., Sacramento, CA, for Red Shield Servicing, Inc.

Julia P. Gibbs, Esq., El Dorado Hills, CA, for Ronald R. Bieber, et al.

Fred W. Kaiser, Esq., Sacramento, CA, for Chess Family Trust, et al.

## MEMORANDUM DECISION

MICHAEL S. MCMANUS, Chief Judge.

The chapter 13 trustee moves to dismiss the debtors' chapter 13 petition on the ground that the debtors have not paid in full the secured claims of Red Shield Servicing, Inc., even though the 42–month plan term has expired.

The debtors failed to appear at the hearing on the trustee's motion and they filed no written opposition to the motion. Consequently, their defaults will be entered.

Because the debtors' plan required that Red Shield's secured claims be paid in full, and because they have neither been paid nor disallowed, the trustee's motion will be granted.

## I

Red Shield Servicing, Inc., services two loans made to the debtors. These loans are memorialized by two promissory notes executed by the debtors. A timely proof of claim was filed for each loan. While Red Shield services these loans, the beneficial interest in them has been fractionalized and is held by many individual investors.

The first promissory note is dated November 13, 1997, and is in the original sum of $105,000. It bears interest at 14% per annum. This note is secured by a first deed of trust against the debtors' real property at 805 F Street, Sacramento. The debtors reside in a portion of this property and they rent out the other portions of it. This note matured on January 1, 2001. According to the proof of claim filed for this loan, the loan balance on the date of the petition was $135,762.12.

The second note, dated January 13, 1999, is in the original sum of $30,000. It bears interest at the rate of 15% per annum. This note is secured by a second deed of trust against the debtors' real property and it matured on February 20, 2001. According to the proof of claim filed for this loan, the loan balance on the date of the petition was $39,415.51.

The debtors' chapter 13 plan provides that Red Shield's secured claims will be

paid in full over 36 months.[1] This term could be extended up to six months if necessary to pay the dividends promised by the plan.[2]

Red Shield's secured claims, aggregating approximately $175,177.63 according to Red Shield's two proofs of claim, are classified in Class 2. The plan provides that if these two claims are filed and allowed, they must be paid in full through the plan.[3]

The plan, however, required that the debtors pay only $300 a month to the trustee. Even though it is a mathematical certainty that these monthly payments, whether made for 36 or 42 months, could not possibly yield enough to pay $175,177.62 to Red Shield,[4] neither Red Shield nor the trustee objected to confirmation of the plan. Consequently, the plan was confirmed on May 31, 2001.

■ Confirmation of the plan despite its inability to accomplish the stated of goal of paying Red Shield's secured claims in full does not compel Red Shield to accept the plan dividend as payment in full of its claims. This is so because the plan specifically provided that Red Shield's claims would be paid in full[5] over a period not to exceed 42 months,[6] and that its claims would be determined by its proofs of claim,

1. The plan actually identifies only one secured claim held by Red Shield. However, according to the plan, this claim is in the amount of $177,562. This is approximately the amount owed on both loans on the date the petition was filed. According to the two proofs of claim filed by Red Shield on March 29, 2001, the amount secured by the first deed of trust totaled $135,762.12 (pre-petition arrears of $30,762.12 plus $105,000 in principal), and the amount secured by the second deed of trust totaled $39,415.51 (pre-petition arrears of $9,415.51 plus $30,000). Both proofs of claim total $175,177.63. According to the plan, "The proof of claim filed by or on behalf of a creditor, not the plan or the schedules, will determine the amount ... of the creditor's claim."

2. The debtors' plan contains the following language regarding its length: "In order to complete this plan, the future income of Debtor will be submitted to the supervision and control of the Chapter 13 Trustee ('Trustee'). Debtor shall pay to the Trustee the sum of $300 each month for 36 months.... Unless all allowed unsecured claims are paid in full, the plan shall not terminate earlier than the stated term or 36 months, whichever is longer. *If necessary to complete this plan, the term will be extended up to 6 months,* but in no event will the plan exceed 60 months in length." [Underlining added for emphasis.]

3. As to Class 2 secured claims, the plan provides: "**Class 2. Secured claims that are modified by this plan or that will not extend beyond its length**. This class includes any secured claim that has matured or will mature prior to the completion of the plan. It also includes any secured claim, regardless of its maturity date, that is modified as permitted by 11 U.S.C. § 1322(b)(2) or (c)(2). *Each secured claim* will continue to be secured by its existing lien or security interest *and will be paid its full amount* or the market value of its collateral, whichever is less if permitted by § 1322(b)(2), together with interest." [Underlining added for emphasis; bold type in original.] The reference to payment of the market value of the creditor's collateral in lieu of the full amount of its claim is not applicable in this case. The debtors did not file a motion to value Red Shield's collateral. *See* 11 U.S.C. § 506(b) and Fed. R. Bankr.P. 3012. Further, their schedules indicate that the collateral had a value of $261,000. *See* Schedule A filed May 2, 2001. That is, Red Shield's two secured claims totaling $175,177.63, were secured by property worth $261,000.

4. Thirty-six installments of $300 will yield $10,800. Forty-two installments will yield $12,600. After deducting trustee compensation, which the court estimates will be 8% over the life of the plan, there will be approximately $9,936 to $11,592 available to retire Red Shield's claims.

5. *See* footnote 3.

6. *See* footnote 2.

not by the plan.[7]

The provision in the debtors' plan specifically requiring that Red Shield's claims be paid in full distinguishes it from the plan at issue in *In re Pagano,* 2001 WL 114366 (Bankr.N.D.Cal.2001), *affirmed by* 2002 WL 31159110 (N.D.Cal.2002).

In *Pagano* the debtor's plan required him to pay $100 a month for 36 months. From this, the trustee was required to pay "priority creditors in the order prescribed by 11 U.S.C. § 507." After the plan was confirmed without objection, a creditor filed a priority claim exceeding $150,000. Even though Mr. Pagano completed all plan payments, those payments were insufficient to pay the priority claim in full.

Because 11 U.S.C. § 1322(a)(2) requires that priority claims be paid in full, the trustee and the priority creditor objected to the entry of a discharge. They asserted that the plan, while failing to expressly require payment in full of the priority claim, did not provide that the claim would not be paid in full. They believed that construing the plan to not require payment in full of a priority claim would be contrary to section 1322(a)(2).

Both the bankruptcy court and the district court directed that Mr. Pagano receive a discharge even though the priority claim had not been paid in full. This interpretation of the plan admittedly conflicted with section 1322(a)(2). However, because no one had objected to the absence of a provision requiring payment in full of the priority claim, the courts in *Pagano* permitted the plan to contradict the requirements of section 1322(a)(2).

Other courts have not permitted debtors to escape the command of section 1322(a)(2) so easily. *See e.g., In re Escobedo,* 28 F.3d 34 (7th Cir.1994); *In re Goude,* 201 B.R. 275 (Bankr.D.Or.1996). However-

er, this court need not explore the issue further in the context of 11 U.S.C. § 1325(a)(5)(B) (requiring payment in full of allowed secured claims) because the debtors' plan, unlike Mr. Pagano's plan, expressly provided that Red Shield's secured claims, as demanded in its proofs of claim, had to be paid in full unless they were disallowed.

## II

Rather than pay Red Shield's claims, the debtors were hoping to disallow them. To accomplish this, the debtors filed two adversary proceedings (Adv. Nos. 01–2192 and 03–2260) seeking not only the disallowance of the claims, but an award of damages for what might be referred to as alleged predatory loan practices.

The debtors used the court's standard plan applicable in chapter 13 cases filed on March 1, 2001 through June 30, 2003. *See* General Order 01–02, ¶ 2(a). That plan incorporates by reference General Order 01–02. Together, the plan and the General Order make clear that the plan confirmation process and the claim allowance process are separate and distinct.

For example, if a plan omits a claim, this does not mean the claim is disallowed. It means only that the claim is not provided for by the plan.

Also, if the plan provides for a secured claim totaling $1,000 with collateral worth $750, confirmation of the plan does not prevent the claim holder from asserting that its claim is more than $1,000 or that its collateral is worth more (or less) than $750.

In this regard, the plan provides:

To be paid, creditors, including secured creditors, must file proofs of claim. The proof of claim filed by or on behalf of a

---

7.  *See* footnote 1.

creditor, not the plan or the schedules, will determine the amount and character of the creditor's claim. If a creditor's claim is provided for by this plan and a proof of claim is filed, dividends will be paid based upon the proof of claim unless the granting of a valuation or a lien avoidance motion, or the sustaining of a claim objection, affects the amount or classification of the claim. Secured claims not listed within Classes 1, 2, 3, or 4, and priority claims not listed within Class 5 are not provided for by the plan. Whether or not a proof of claim is filed, Debtor shall make ongoing post-petition installment payments on Class 1 and 4 claims.

Because the proof of claim, not the plan, will determine the amount of a claim as well as its characterization as a general unsecured, priority unsecured, or secured claim, and because the bar date for filing proofs of claim typically comes after confirmation of the plan (as in this case), confirmation of a plan will sometimes mean that a plan fails to provide for filed claims in a manner consistent with 11 U.S.C. §§ 1322 and 1325.

For instance, suppose a plan provides for a claim on the assumption that it is a general unsecured claim but the claim holder files a proof of claim asserting that it is secured or is entitled to priority treatment under 11 U.S.C. § 507. If the plan is not modified, or if the claim is not disallowed, the plan will run afoul with the requirements of section 1325(a)(5) (requiring that secured claims be paid in full absent a surrender of the creditor's collateral) or section 1322(a)(2) (requiring payment in full of priority claims). *See* 11 U.S.C. §§ 1322(a)(2) and 1325(a)(5)(A) & (B).

Similarly, if the plan provides for payment in full of a secured claim on the assumption that it totals $5,000 but the secured creditor files a proof of claim demanding $50,000, the plan cannot be completed within its term and also pay the secured claim in full. In other words, when a plan is evaluated in light of the claims filed by creditors, it may no longer be feasible. *See* 11 U.S.C. § 1325(a)(6).

In some courts, problems such as these are sidestepped by delaying confirmation of the plan until after the expiration of the bar date for filing proofs of claim. Once the bar date has passed, the amount and character of the claims can be ascertained with precision. This makes evaluation of the plan's feasibility and compliance with the other requirements of sections 1322 and 1325 a much easier task.

However, it also means that there will be a rather lengthy delay before a plan is confirmed.

The bar date for nongovernmental creditors to file proofs of claim does not expire until 90 days after the first date set for the meeting of creditors. Fed. R. Bankr.P. 3002(c). The meeting of creditors may be set no earlier than 20 days and no later than 50 days after the filing of a chapter 13 petition. Fed. R. Bankr.P.2003(a).

The bar date for governmental creditors to file proofs of claim does not expire until 180 days after the filing of a chapter 13 petition. Fed. R. Bankr.P. 3002(c)(1).

When one takes into account the additional 30 days given to the debtor, the trustee, and any guarantor, surety, indorser, or other codebtor to file a proof of claim on behalf of a creditor, as well as the requirement that creditors be given at least 25 days' notice of the deadline for objecting to a plan and of the confirmation hearing, delaying confirmation until after the expiration of all bar dates means delaying confirmation until a minimum of 235

days after the filing of the petition. Fed. R. Bankr.P. 3004, 3005, 2002(b), 3015.[8]

The primary drawback to such a scheme is the trustee's inability to make payments to creditors prior to confirmation of the plan. Section 1326(a)(2) requires the trustee to hold all payments made by the debtor pursuant to a proposed plan until the plan is confirmed. *See* 11 U.S.C. § 1326(a)(2).

Delaying payments to creditors for over six months virtually guarantees that secured creditors will file motions seeking either adequate protection payments or relief from the automatic stay. These motions clutter the docket and drive up the costs of all parties.

If the court deals with these motions by requiring the trustee to make adequate protection payments to secured creditors, the trustee likely will not be compensated for his services since 28 U.S.C. § 586(e)(1)(B) permits compensation only in connection with distributions pursuant to the plan.

On the other hand, if the court does not conscript the trustee and require him to make adequate protection payments to secured creditors, it must keep in mind that the debtor usually has the right to dismiss the petition at any time. *See* 11 U.S.C. § 1307(b). So, after making plan payments to the trustee for six or more months while using the automatic stay to keep creditors at bay, a debtor could dismiss the petition prior to confirmation of the plan, thereby compelling the trustee to refund all of the plan payments to the debtor. *See* 11 U.S.C. § 1326(a)(2).

Confirming a plan prior to the expiration of the bar dates for filing claims requires the court to find some other method for reconciling the plan with the claims actually filed by creditors.

Some courts do this by subjugating the claims allowance process to the plan confirmation process.

For instance, some courts hold that if the plan states that the collateral for a secured claim is worth $5,000 and the creditor does not object to confirmation, its secured claim is limited to $5,000 even though the bar date for filing proofs of claim has not expired and even though the debtor has not filed and served a contested matter objecting to the proof of claim or valuing its collateral. *See* Fed. R. Bankr.P. 3007, 3012, 9013, 9014. Cases such as *In re Harnish,* 224 B.R. 91, 93–94 (Bankr.N.D.Iowa 1998) (failure of plan to provide for secured claim in confirmed plan meant that claim was unsecured notwithstanding the timely filing of secured proof of claim), *Factors Funding Co. v. Fili (In re Fili),* 257 B.R. 370, 372–74 (1st Cir. BAP 2001) (disclaiming liability in confirmed plan meant later proof of claim was nullity), and *In re Ross,* 162 B.R. 785, 789–90 (Bankr.N.D.Ill.1993) (valuation in confirmed plan supercedes valuation in proof of claim), typify this approach.

This court takes a different approach.

It confirms chapter 13 plans as soon as possible in order to start the flow of payments to creditors. After the bar dates for filing proofs of claim have expired, the trustee and the debtor then reconcile the

---

**8.** The 235 days consists of the 180–day deadline for governmental claims, the additional 30 days for the debtor and others to file a claim on behalf of a creditor, and the 25 days' notice of the hearing on the confirmation of the plan. Because Rule 2002(b) requires 25 days' notice of both the deadline for objec- tions to the plan and the confirmation hearing, this calculation assumes that objections can be raised at the confirmation hearing. If the court requires written objections to be filed prior to the confirmation hearing, confirmation will be further delayed.

plan with the filed claims. This may entail objecting to claims, filing proofs of claim on behalf of creditors, avoiding liens, valuing collateral, or modifying the plan.

The lynchpin of this process is the trustee's preparation of a Notice of Filed Claims. Nothing in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure requires the trustee to prepare this Notice. The Notice of Filed Claims is a creature of this court's General Order on chapter 13 practice. *See* General Order 01–02, its predecessors, General Orders 97–02 and 00–02, and its successor, General Order 03–03 at ¶ 6. The terms of the General Order are incorporated into every chapter 13 plan, including the plan in this case, confirmed by the court.

Once the plan is confirmed, and after all bar dates for filing proofs of claim have expired, the trustee reviews the proofs of claim, compares them to the debtor's schedules and plan, and then summarizes the claims, both scheduled and filed, in the Notice of Filed Claims. It is then filed and served on the debtor and the debtor's attorney.

If a proof of claim has been filed, the Notice of Filed Claims states the date it was filed, the amount of the claim, the amount scheduled, and the character of the claim (unsecured, priority, or secured). If a proof of claim has not been filed for a scheduled claim, this is also noted in the Notice of Filed Claims.

Suppose a proof of claim was not filed by a secured creditor. The plan, as noted above, requires that a proof of claim be filed before a claim may be paid through the plan. *See also United States v. Osborne (In re Osborne)*, 76 F.3d 306, 308–309 (9th Cir.1996); *Ledlin v. United States (In re Tomlan)*, 102 B.R. 790, 791–92 n. 1 (E.D.Wash.1989), *aff'd per curiam*, 907 F.2d 114 (9th Cir.1990). Because a lien will survive the chapter 13 discharge if the debt it secures is not satisfied, a chapter 13 debtor is usually motivated to file a proof of claim on behalf of a secured claim holder. This insures the claim will be paid, ultimately freeing the claim's collateral from the lien. *See e.g., Matter of Tarnow*, 749 F.2d 464, 465 (7th Cir.1984); *Bisch v. United States (In re Bisch)*, 159 B.R. 546, 549 (9th Cir. BAP 1993). The Notice of Filed Claims informs the debtor when it is necessary to file a claim on behalf of a secured creditor.[9]

If the plan fails to provide for a secured claim, the claim will not be paid even if the creditor files a proof of claim. In such cases, in order to comply with sections 1322(a)(2) and 1325(a)(5) and to obtain the broadest possible chapter 13 discharge pursuant to 11 U.S.C. § 1328(a), the debtor will usually wish to modify the plan in order to provide for any omitted secured or priority claim.

Similarly, if the claims are higher than expected, and the plan cannot be completed within its term, the Notice of Filed Claims informs the debtor of the problem in time to object to the claim(s) causing the over-extension, modify the plan, or both. Without this information, the debtor might complete the plan only to discover that he or she had not paid all claims as promised. Because all payments had been completed, the debtor would be unable to modify the plan. *See* 11 U.S.C. § 1329(a) (a plan may be modified "any time after confirmation of the plan but before the completion of

---

9. For instance, a chapter 13 debtor might be motivated to file a claim on behalf of an unsecured creditor whose claim could not discharged. Claims for most student loans, for instance, are not dischargeable in chapter

13. *See* 11 U.S.C. § 1328(a)(2). Every dollar paid to a student lend is a dollar the debtor will not have to pay after the conclusion of the chapter 13 case.

payment...."). And, because all promised dividends were not paid, the debtor would not be entitled to a discharge. *See* 11 U.S.C. § 1328.

The Notice of Filed Claims, then, alerts the debtor to the possible need to object to a proof of claim, file a proof of claim on behalf of a creditor,[10] move to value the collateral securing a claim, move to avoid a lien pursuant to 11 U.S.C. § 522(f), modify the plan to provide for an omitted claim, or anything else needed to insure that the plan completes within its term, pays the promised dividend to creditors, and satisfies all the requirements of sections 1322 and 1325.

### III

■ Because the stream of plan payments had no hope of paying Red Shield in full over 36 to 42 months, it was incumbent on the debtors to object to Red Shield's claims in order to eliminate them or at least reduce them to a level that could be managed by the plan. As noted previously, they attempted to disallow its claims in two adversary proceedings.

The first adversary proceeding, Adv. No. 01–2192, was voluntarily dismissed by the debtors. The second adversary proceeding, Adv. No. 03–2260, was dismissed by the court on September 7, 2004 for the reasons explained in a Memorandum Decision also filed on September 7.

■ Therefore, the debtors have completed their plan payments and, even though they were unable to disallow Red Shield's secured claims, they have not paid those claims in full as their plan required. This breach warrants dismissal of the case pursuant to 11 U.S.C. § 1307(c)(6) unless the debtors are willing and able to modify their plan to provide for payment of the claims.

The debtors are no longer able to modify their plan. Their plan permitted them to make a maximum of 42 monthly plan payments to the trustee. The forty-second monthly payment fell due on September 25, 2004. A review of the docket reveals no motion by the debtors, the trustee, or any unsecured creditor to modify the plan. *See* 11 U.S.C. § 1329(a). It does not appear anyone wishes to modify the plan.

■ Further, it is now too late to modify the debtors' confirmed plan. Section 1329(a) requires that any post-confirmation modification of a chapter 13 plan be accomplished "before the completion of payments under such plan." In this case, the debtors have completed the payments required by their confirmed plan.

In other chapter 13 cases involving a disputed secured claim, the plans typically include some provision for the payment of the claim if the claim is allowed. For example, if the monthly plan payments are insufficient to pay the claim, the debtor sometimes provides for the sale or refinance of the property in order to pay the secured claim.[11]

---

**10.** Because the deadline set by Fed. R. Bankr.P. 3004 for filing proofs of claim on behalf of a creditor will likely expire before the trustee prepares and serves the Notice of Filed Claims, the general order provides that this deadline is extended to 90 days after service on the debtor of the Notice of Filed Claims. Fed. R. Bankr.P. 9006(b) does not preclude this extension.

**11.** In addition to a debtor's disposable income, payments under a chapter 13 plan may be based on the proceeds from the sale or refinance of property. If a debtor's income is not sufficient by itself to pay claims in full, there is nothing in 11 U.S.C. § 109(e) that requires a debtor to pay claims only from future disposable income. The plan may also propose to sell property or refinance it in order to pay claims. *See e.g., In re Hogue*, 78 B.R. 867, 870–71 (Bankr.S.D.Ohio 1987).

Here, the debtors gambled that they would be successful in their efforts to disallow Red Shield's secured claims. They were unsuccessful, their plan left them with no means of paying those claims, and it is too late to modify the plan to rectify this problem.

It bears mention that the court previously warned the debtors that could find themselves in this predicament if they were unable to disallow Red Shield's secured claims. In a Memorandum Decision filed on December 29, 2003, the court urged the debtors

> "to consider modifying their plan to make some provision for the payment of the creditors' claims in the event the debtors do not prevail in the adversary proceeding. The court is not suggesting that the debtors cannot prevail. Rather, it is suggesting only that they carefully consider the impact of 11 U.S.C. § 1329(a). Section 1329(a) will preclude them from modifying their plan once they have made their [last plan payment]. Because the adversary proceeding will be concluded at approximately the same time they make this last plan payment, the debtors will lose the ability to reorganize these claims *if* they are allowed."

The debtors did not modify their plan and now it is too late to do so. Because their confirmed plan did not pay Red Shield's secured claims as it required, there is cause to dismiss the petition.

A separate order will be entered.

This is specifically permitted by 11 U.S.C. § 1322(b)(8). *See also In re Gavia,* 24 B.R. 573, 575 (9th Cir. BAP 1982) ("[W]e construe

[section 1322(b)(8) ] as permitting a plan to supplement payments from future income.").