In re MEADOWBROOK ESTATES, a California limited partnership, fDBA Huntington Ranch, Debtor.

Meadowbrook Estates, a California limited partnership, fDBA Huntington Ranch, Plaintiff,

v.

McElvany, Inc., a California corporation, Defendant.

Bankruptcy No. 99–93271–A–11.
Adversary No. 99–9129.

United States Bankruptcy Court,
E.D. California,
Modesto Division.

March 31, 2000.

Donald F. Drummond, Esq., of Lukens and Drummond, San Francisco, California, for Meadowbrook Estates.

Gary B. Polgar, Esq., of Allen, Polgar, Poietti, & Fagalde Merced, California, for McElvany, Inc.

## AMENDED MEMORANDUM DECISION

MICHAEL S. McMANUS, Bankruptcy Judge.

The chapter 11 debtor and debtor in possession, Meadowbrook Estates, the plaintiff in this adversary proceeding, requests summary judgment. Defendant McElvany, Inc., however, asks this court to abstain from deciding the controversy presented in the complaint. Alternatively, the defendant asks that summary judgment be entered in its favor.

The defendant's motion requires the court to determine whether it must or should abstain from hearing a chapter 11 debtor in possession's challenge to the validity and enforceability of a creditor's claim and lien because the creditor did not file a proof of claim. The court concludes that circumstances warrant denial of the defendant's abstention motion.

While the court concludes that some of the claims presented in the complaint can be summarily adjudicated in favor of the defendant, the facts necessary to resolve the primary dispute between the parties are disputed and cannot be determined without a trial.

I

The plaintiff, Meadowbrook Estates, is a California limited partnership formerly known as Huntington Ranch, a California limited partnership. J.C. Williams Company, a California corporation, is the general partner of Meadowbrook Estates. J.C. Williams Company is also the general partner of Charleston Place, a California limited partnership.

The plaintiff was created for the purpose of developing subdivision lots and building and selling houses on those lots. This real estate development project was divided into two phases. During Phase I, 56 houses were to be built and sold. During Phase II, 48 more houses were to be built and sold.

On June 28, 1994, the plaintiff entered into a contract with the defendant pursuant to which the defendant agreed to make certain underground and aboveground improvements to all 104 lots. Ike McElvany, the defendant's former president, holds a 10% limited partnership interest in the plaintiff. Charles McElvany is now the president of McElvany, Inc.

The plaintiff alleges that the defendant was to make improvements to Phase II lots only after the plaintiff had sold a substantial number of the Phase I lots. While the plaintiff admits that it later agreed to modify the contract to permit the defendant to simultaneously work on both phases, the plaintiff contends it did not agree to pay the defendant for Phase II work until houses in Phase II were sold.

The plaintiff paid McElvany, Inc., approximately $148,611.00 pursuant to the contract. On October 12, 1994, McElvany, Inc., accepted a note in the face amount of $525,508.94, as payment for the balance owed. The note was not secured by any collateral. The note states that payment "shall be due and payable either upon the sale/reconveyance of any/all lots or upon the recordation of a development loan...." The plaintiff asserts that the term "any/all lots" refers to the 48 lots to be sold during Phase II. On November 14, 1994, the principal balance on the note was further reduced by the payment of $195,-417.65.[1]

According to the plaintiff, on or about July 7, 1997, the defendant requested that the plaintiff execute a new secured note in the place of the original unsecured note. The plaintiff declined to execute a new note. This prompted the defendant to file suit in Merced County Superior Court in November, 1997 ("the Merced Litigation") in order to collect on the note which it maintained had fully matured. The plaintiff defended on the basis that the action was premature because the sale of Phase II lots had not yet occurred. Despite the plaintiff's defense, on or about June 25, 1998, the defendant was able to obtain a prejudgment writ of attachment in the Merced Litigation against the remaining three lots in Phase I and all of the Phase II lots.

On or about September 9, 1998, the plaintiff and defendant agreed to a settlement of the Merced Litigation. The terms were as follows:

1. The defendant would receive a stipulated judgment against the plaintiff in the amount of $598,000.00, which

---

1. According to the plaintiff, after this payment the note's balance was reduced to $388,-768.45. The defendant maintains that the balance was reduced to $404,635.37.

would not be filed or recorded before December 9, 1998.

2. The defendant would execute and deliver to the plaintiff a new note secured by a deed of trust on Phase II in the amount of $598,000.00, due and payable on December 9, 1998. These instruments were executed by the plaintiff and delivered to the defendant. The deed of trust was recorded on November 10, 1998.

3. If the plaintiff paid $598,000.00 to the defendant on or before December 9, 1998, the Merced Litigation would be dismissed, the note returned to the plaintiff, and the deed of trust reconveyed.[2]

4. Alternatively, if the plaintiff paid the defendant $350,000.00 on or before December 8, 1998, the Merced Litigation would be dismissed, the note's maturity extended to March 8, 2000, and the balance discounted to $174,000.00. The balance would continue to be secured by the deed of trust.

The settlement documentation did not explain the interplay between the $598,000.00 secured note and the judgment in the event the plaintiff neither paid $598,000.00 by December 9 nor paid $350,000.00 by December 8. Were the judgment and the secured note alternative remedies, permitting the defendant to either obtain and enforce the judgment or to satisfy the note by foreclosure of Phase II? Were the note and deed of trust to be "traded" for the judgment entered on or after December 9? Or was the defendant first required to proceed against the Phase II lots under the rights granted it by the deed of trust and then satisfy any deficiency by enforcing the judgment? The settlement documentation does not answer these questions.

And, of course, the parties do not agree on the answers to these questions. John C. Williams, the controlling shareholder of the plaintiff's corporate general partner, maintains that if the plaintiff did not make the payment due under the note by December 9, 1998, the defendant herein would be required to first use the deed of trust to foreclose upon the Phase II lots.

According to Charles McElvany, the parties neither contemplated nor intended that the defendant would foreclose upon the deed of trust. Rather, he asserts that the defendant received the deed of trust "purely for defensive purposes." That is, the deed of trust was recorded to ensure that, if the plaintiff was able borrow against the Phase II lots between the date of the settlement, September 9, and date the $350,000.00 was payable, December 8, or the date the $598,000.00 was payable, December 9, the lender would not permit the plaintiff to use the loan proceeds without first paying the defendant. According to Mr. McElvany, if not timely paid $350,000.00 or $580,000.00, his company would be free to obtain and enforce the judgment.

The plaintiff paid neither amount but it was negotiating with Washington Mutual to obtain a loan to pay the defendant. The plaintiff offered to pay the defendant for an extension of time. The offer was rejected.

Therefore, on December 9, 1998, the defendant obtained the judgment and recorded abstracts of it. As a result, the plaintiff contends that it was unable to obtain construction financing for Phase II because title to the remaining Phase I lots and all of the Phase II lots was clouded by the recorded abstracts.

The defendant never attempted to exercise any remedies granted to it by the deed of trust. Instead, the defendant be-

---

2. While the Stipulation for Settlement executed by the parties does not expressly contain these provisions, payment in full would necessarily require dismissal of the lawsuit, return of the note, and reconveyance of the deed of trust. It appears that the parties contemplated the plaintiff would elect to pay $350,000.00 on before December 8 rather than $598,000.00 on or before December 9.

gan to enforce the judgment. On December 22, 1998, it obtained a writ of execution and levied it on the Phase II lots. The defendant also made a demand on the escrow of a home sale in Phase I and collected approximately $9,558.81. Finally, it filed a motion in Merced County Superior Court for a charging order against J.C. Williams Company's partnership interest in another partnership, Charleston Place. The charging order was issued on February 26, 1999, over the objection of J.C. Williams Company. J.C. Williams Company made the objection on its own behalf rather than on behalf of the plaintiff. Its objection was based on the one form of action rule of Cal. Civ. Pro. Code § 726. The Merced County Superior Court overruled the objection and issued the charging order.

On July 21, 1999, to avoid an execution sale of the lots, the plaintiff filed a petition under chapter 11 of the bankruptcy code and soon thereafter commenced this adversary proceeding. The court construes the complaint as a request for a judgment declaring that the defendant has, by virtue of Cal. Civ. Pro.Code § 726, waived not only its lien on the Phase II lots, whether created by the deed of trust or the judgment, but its underlying claim as well. The plaintiff asks that the defendant's claim be disallowed under 11 U.S.C. § 502, or, alternatively, that it be subordinated pursuant to 11 U.S.C. § 510(c).

## II

The plaintiff has moved for summary judgment. The defendant not only opposes the motion but also requests that this court abstain from considering the claims stated in the complaint. In the alternative, the defendant asks that summary judgment be entered it its favor.

## A

There is a preliminary issue. The defendant has not filed a proof of claim. Will this have any impact on the court's jurisdiction or the resolution of the defendant's motion for abstention?

■ A secured creditor is not required to file a proof of claim. And if it chooses to not file a claim, its lien will pass through the bankruptcy and remain in place. *See e.g., Matter of Tarnow,* 749 F.2d 464, 465 (7th Cir.1984). While the debtor's liability for the secured creditor's claim will be discharged and the creditor will not receive a dividend from the estate, its lien will be unaffected by the bankruptcy. 11 U.S.C. § 506(d)(2) & § 1141(d)(1)(A)(i). Only the automatic stay of 11 U.S.C. § 362(a) will suspend such a creditor's right to foreclose upon its security. *See Matter of Penrod,* 50 F.3d 459, 461–64 (7th Cir.1995); *In re Thomas,* 883 F.2d 991, 998 (11th Cir.1989), *cert. denied,* 497 U.S. 1007, 110 S.Ct. 3245, 111 L.Ed.2d 756 (1990) (confirmation of a plan cannot extinguish a lien for which no proof of claim was filed); *In re Bisch,* 159 B.R. 546, 549 (9th Cir. BAP 1993); *In re Work,* 58 B.R. 868, 873 (Bankr.D.Or.1986).

■ A debtor, however, is not without recourse when confronted with a secured creditor intent upon boycotting the bankruptcy case. "A secured creditor may be dragged into the bankruptcy involuntarily, because the trustee or debtor (if there is no trustee), or someone who might be liable to the secured creditor and therefore has an interest in maximizing the creditor's recovery, may file a claim on the creditor's behalf." *Matter of Penrod,* 50 F.3d at 462. *See also* 11 U.S.C. § 501(b) and (c); Fed.R.Bankr.P. 3004 and 3005. Indeed, all a chapter 11 debtor need do is schedule the secured creditor's claim as liquidated, undisputed, and noncontingent, and the creditor's claim will be "deemed filed." 11 U.S.C. § 1111(a).

The plaintiff's schedules list the defendant's claim as "disputed." Consequently, the claim of the defendant is not deemed filed. 11 U.S.C. § 1111(a). The last date for nongovernmental creditors to file a proof of claim in this case was November 12, 1999. The defendant did not file a proof of claim before or after this deadline. Nor did the plaintiff or a guarantor, sure-

ty, indorser, or other codebtor liable to the defendant with the plaintiff, such as the plaintiff's general partner, file a proof claim on behalf of the defendant. The time to do so expired on December 12, 1999. *See* Fed.R.Bankr.P. 3004 and 3005.

■ Because no proof of claim has been filed by or on behalf of the defendant, the plaintiff will be unable to provide for the defendant's claim in its plan or abrogate, extinguish, or modify the defendant's lien or security interest through the bankruptcy reorganization process. *Accord In re Penrod,* 50 F.3d at 462–63; *In re Thomas,* 883 F.2d at 998; *In re Alderman,* 150 B.R. 246, 251–53 (Bankr.D.Mont.1993). The consequence of this conclusion on the court's jurisdiction and the defendant's motion for abstention is discussed below.

**B**

■ The defendant asks the court to abstain from hearing this adversary proceeding. Abstention may be either permissive or mandatory. The bankruptcy court may abstain from hearing a proceeding "arising under title 11, or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). The bankruptcy court is required to abstain from hearing "a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11" unless there is another basis for federal jurisdiction or the matter cannot be timely adjudicated in state court. 28 U.S.C. § 1334(c)(2).

■ The bankruptcy court is not required to abstain unless the proceeding is merely "related to" a case under title 11. Generally speaking, related proceedings concern causes of action that are owned by the debtor at the time the petition is filed and that become part of the estate pursuant to 11 U.S.C. § 541(a). They also include those civil proceedings that "take place between third parties, such as a suit between a creditor and a guarantor of a debtor's obligation." 1 Lawrence P. King, *et al., Collier on Bankruptcy,* "Jurisdiction and Powers of the Court," ¶ 3.05[2], p. 3–70 (15th ed. rev.Dec.1999).

■ The Ninth Circuit has concluded that a "related" proceeding is largely synonymous with a "non-core" proceeding. *See Benedor Corporation v. Conejo Enterprises, Inc. (In re Conejo Enterprises, Inc.),* 71 F.3d 1460, 1464, n. 3 (9th Cir. 1995). A non-core proceeding " 'does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy....' " *Maitland v. Mitchell (In re Harris Pine Mills),* 44 F.3d 1431, 1435 (9th Cir.1995) (quoting *In re Wood,* 825 F.2d 90, 96–97 (5th Cir.1987)).

■ Facially, the complaint seems to be more than just related to this bankruptcy. The complaint purports to state claims under sections 502, 510, and 544 of the bankruptcy code. In other words, the complaint asserts claims that are not subject to mandatory abstention because they either "arise in" or "arise under" the bankruptcy code. Proceedings arising under title 11 "involve a cause of action created or determined by a statutory provision of title 11." *Id.* Proceedings arising in title 11 refer "to those 'administrative' matters that arise *solely* in bankruptcy cases.... [They] are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.*

Closer scrutiny, however, is warranted. As noted above, the defendant has not filed a proof of claim in this chapter 11 case. Consequently, there is no proof of claim to disallow pursuant to 11 U.S.C. § 502 or to subordinate pursuant to 11 U.S.C. § 510. Nor does the complaint state a claim for relief under 11 U.S.C. § 544. It does not assert that any prepetition transfer is avoidable under any of the powers granted to the debtor in possession by section 544(a). Nor does the complaint allege that a pre-petition transfer could be avoided by an actual unse-

cured creditor under applicable non-bankruptcy law as permitted by section 544(b).

Instead, the complaint asserts that the defendant violated one of California's antideficiency laws and thereby extinguished its debt, its security interest, or both. This claim could have been maintained in state court whether or not this bankruptcy case had been filed. This proceeding is, therefore, merely related to this bankruptcy case.

■ This does not mean, as argued by the defendant, that this court is without subject matter jurisdiction. This court has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. § 1334(b), which provides:

> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings ... related to cases under title 11.

The jurisdiction of the district court is referred to the bankruptcy court by 28 U.S.C. § 157(a) and a general order of the District Court for the Eastern District of California.

■ The bankruptcy court has jurisdiction over a related proceeding when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984). *See also, In re Fietz*, 852 F.2d 455, 457 (9th Cir.1988).

Even though the plaintiff's reorganization plan will be unable to modify the defendant's claim and lien because of the absence of a proof of claim, the adjudication of the complaint is central to this reorganization. Confirmation of a reorganization plan will be determined in part by whether it is feasible. *See* 11 U.S.C. § 1129(a)(11). Feasibility hinges on the debtor's financial ability to pay its debts whether or not those debts are restructured by the reorganization plan. The defendant's disputed debt is approximately $600,000.00. The value of the Phase II

lots encumbered by its lien is approximately $650,000.00. The plaintiff's liability for this debt and the validity of the defendant's judicial lien and deed of trust are obviously central to any plan's feasibility, particularly one based on the plaintiff's ability to sell the Phase II lots. Therefore, the court has subject matter jurisdiction over the complaint.

■ But must the court abstain? This discussion began with this question. Because this proceeding is merely related to the bankruptcy case, section 1334(c)(2) seemingly requires abstention. The court, however, concludes that abstention is not required because the proceeding cannot be timely adjudicated in state court. The dispute between these parties is not framed in any pending state court proceeding. A trial is scheduled to be heard in this court in approximately two months. Resolution of the dispute by this court will be more timely, particularly when one considers that no reorganization plan can be confirmed until this dispute is resolved.

Nor is permissive abstention under section 1334(c)(1) appropriate. The Ninth Circuit has promulgated twelve non-exclusive factors for the court to consider in deciding whether to abstain under section 1334(c)(1). These factors are: "(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the

likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties." *Eastport Associates v. City of Los Angeles (In re Eastport Associates)*, 935 F.2d 1071, 1075–76 (9th Cir. 1991) (quoting *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir.1990)).

The first and sixth factors strongly favor this court's resolution of the dispute. The determination of the validity of the defendant's debt and lien or security interest is central to this reorganization process. While this dispute primarily implicates state law, the third, fourth, fifth, seventh, eighth, ninth, tenth, eleventh, and twelfth factors do not significantly enter into the calculus, particularly when one considers that a trial is set to be heard in this court in less than two months.

The motion for abstention will be denied.

### C

A motion for summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c) as incorporated by Fed.R.Bankr.P. 7056.

### 1

As already noted above, because no proof of claim has been filed by or on behalf of the defendant, no objection to the proof of claim is possible. There is no need to object to a proof of claim that has not been filed. Judgment will be entered for the defendant on the claim for relief pursuant to 11 U.S.C. § 502.

### 2

Similarly, judgment must be entered for the defendant on the plaintiff's request to subordinate the defendant's claim pursuant to 11 U.S.C. § 510(c). Section 510(c)(1) permits this court, "under principles of equitable subordination, [to] subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim...." Section 510(c)(2) also permits the court to "order any lien securing such a subordinated claim be transferred to the estate."

A predicate to relief under section 510(c), then, is an allowed claim. To have an allowed claim, the defendant's claim must have been scheduled as undisputed, liquidated, and non-contingent by the debtor or a proof of claim must have been filed by or on behalf of the creditor. 11 U.S.C. §§ 501(a) & 1111(a). The defendant's claim was scheduled as disputed and no proof of claim has been filed. Thus, there is nothing to subordinate.

### 3

The first cause of action, ostensibly based on 11 U.S.C. § 544, reads in part:

11. Meadowbrook disputes that Defendant has any lien against the assets of Meadowbrook by virtue of its violation of the one action rule as provided by § 726 of the California Code of Civil Procedure, due to its actions and exercise of post judgment remedies.

12. By virtue of the anti-deficiency provision of said § 726, Defendant has waived its lien or security interest on the real property of Meadowbrook and has waived its claim against the estate.

As noted above, this claim for relief has nothing whatever to do with section 544. It contains no allegations to the effect that a pre-petition transfer is avoidable by a hypothetical judicial lien creditor (section 544(a)(1)), a hypothetical creditor with a writ of execution returned unsatisfied (section 544(a)(2)), a hypothetical bona fide purchaser of real property (section 544(a)(3)), or an actual unsecured creditor (section 544(b)).

This claim for relief is nothing more than a request for declaratory relief and for cancellation of instruments. This claim is governed solely by California law and

could have been maintained in a California court whether or not this bankruptcy case had been filed by the plaintiff.

Given the failure of the stipulation for settlement to explain the interplay between the judgment and the $598,000.00 note and deed of trust, and given the differing understandings of the parties as to how the deed of trust was to be enforced, if at all, the court concludes that there is a genuine issue of material fact that precludes entry of a judgment on this controversy without a trial.

### III

For the reasons explained above, the court will not abstain. It will grant summary judgment in favor of the defendant on the claims for relief based upon 11 U.S.C. §§ 502, 510, and 544. However, the court construes the complaint to request a declaration of rights of the parties with respect to the judgment and the $598,000.00 note and the deed of trust securing that note. The court cannot declare the rights of the parties because there are material disputed facts. A trial is necessary.