FILED

NOT FOR PUBLICATION

MAY 29 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No. CC-12-1445-MkTaJu |
| | ) |
| JAMES W. SIMPSON, | ) BK. No. 11-38929 |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |
| JAMES W. SIMPSON, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **MEMORANDUM**[*] |
| | ) |
| DEUTSCHE BANK NATIONAL TRUST | ) |
| COMPANY; JAN P. JOHNSON, | ) |
| Chapter 13 Trustee; KRISTIE | ) |
| PEREZ, Bankruptcy Specialist | ) |
| at Carrington Mortgage | ) |
| Services LLC, | ) |
| | ) |
| Appellees. | ) |
| | ) |

Submitted Without Oral Argument
on May 16, 2013[**]

Filed – May 29, 2013

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Thomas C. Holman, Bankruptcy Judge, Presiding

Appearances:     Appellant James W. Simpson, pro se, on brief;
Nicolas A. Daluiso of Robinson Tait, P.S., on
brief, for Appellee Deutsche Bank National Trust
Company.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[**]By order entered March 28, 2013, this appeal was deemed suitable for submission without oral argument.

Before: MARKELL, TAYLOR, and JURY, Bankruptcy Judges.

**INTRODUCTION**

Chapter 13[1] debtor James Simpson ("Simpson") objected to the claim of creditor Deutsche Bank National Trust Company as Indenture Trustee for New Century Home Equity Loan Trust Series 2006-2 ("Deutsche Bank") on the ground that Deutsche Bank did not have standing. The bankruptcy court initially sustained the objection, and it also entered an order disallowing the claim. After Deutsche Bank amended its claim and presented further evidence, however, the court vacated its prior disallowance order and overruled Simpson's claim objection.

Simpson appeals from the order overruling his claim objection and vacating the disallowance order. We AFFIRM, but this affirmance is without prejudice to Simpson filing in the bankruptcy court a § 502(j) reconsideration motion based on the undisputed fact that, subsequent to the filing of this appeal, Deutsche Bank foreclosed on the property securing its claim, thereby extinguishing its claim.

**FACTS**

On August 2, 2011, Simpson filed his chapter 13 bankruptcy petition in pro per. On September 29, 2011, Deutsche Bank timely filed Proof of Claim No. 3-1 ("POC 3-1") asserting a secured claim in the amount of $605,614.27.

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2

In POC 3-1, Deutsche Bank identified itself as the creditor and Carrington Mortgage Servicers ("Carrington") as the Note's servicing agent. The basis for the claim was a note ("Note") secured by deed of trust ("Deed of Trust") on real estate in Elk Grove, CA ("Property"). Attached to POC 3-1 were copies of the Note, the Deed of trust, an Assignment of the Deed of Trust (the "Assignment"), and a legal description of the Property.

The Note was executed on May 26, 2006 in the principal amount of $450,000. The Note identified New Century Mortgage Company ("NCMC") as lender and Simpson's wife, Pamela Simpson, as the sole borrower.[2] The last page of the Note contains what appears to be an endorsement in blank signed by an NCMC executive.

The Deed of Trust, also executed on May 26, 2006, was recorded on June 1, 2006. The named beneficiary was the lender, NCMC. Since they both held title to the Property, both Simpson and his wife signed the Deed of Trust as "borrowers." Under ¶ 13 of the Deed of Trust, co-signers like Simpson — those who execute the Deed of Trust but not the Note — only pledge their interest in the Property as collateral to secure the payment obligation under the Note; they are not personally obligated to pay the sums secured by the Deed of Trust. In other words, Simpson presumably had no in personam liability for the debt evidenced by the Note; it was nonrecourse as to him.[3]

---

[2]Pamela Simpson is not a party to Simpson's bankruptcy case.

[3]Consistent with paragraph 13 of the Deed of Trust, the parties treated the Note as the sole obligation of Pamela
(continued...)

3

The Assignment, executed on April 27, 2007, reflects NCMC's assignment of the beneficial interest in the Deed of Trust to Deutsche Bank.

On November 8, 2011, Simpson objected to POC 3-1. He asserted that (i) he did not list Carrington as a creditor on his petition; (ii) neither Deutsche Bank nor Carrington had the right to assert creditor status; (iii) he did not sign the Note; (iv) Deutsche Bank committed perjury on behalf of Carrington by submitting the Note which did not contain his signature; (v) Deutsche Bank had submitted three different versions of the Note with different stamps and markings; and (vi) Deutsche Bank had never produced the original Note for inspection by Simpson per his requests. Therefore, Simpson reasoned, Deutsche Bank had not submitted the documentation necessary to demonstrate that it was a holder of the Note.

One month later, Deutsche Bank opposed Simpson's claim objection. Deutsche Bank attached a declaration by Kristie Perez ("Perez"), an employee of Carrington who declared that Carrington was the servicer of the Note on Deutsche Bank's behalf and that true and correct copies of the Note and Deed of Trust were attached as exhibits to her declaration.

On January 10, 2012, the bankruptcy court heard the claim objection and sustained it, but also granted leave to amend. The

---

[3](...continued)
Simpson. Nonetheless, the debt provided for in the Note may well have qualified as a community claim, as it was incurred in a community property state during marriage and related to the primary residence of a married couple. See generally §§ 101(7), 541(a)(2).

4

bankruptcy court found that Perez's declaration did not establish that Deutsche Bank possessed the original Note. Thus, Deutsche Bank had not demonstrated that it was the Note's holder as required for standing to enforce the claim. On January 13, 2012, the bankruptcy court entered an order ("Conditional Order") sustaining the objection, but also giving Deutsche Bank until February 7, 2012 to file an amended proof of claim. As specified in the Conditional Order: "[i]f Deutsche fails to file an amended proof of claim within the allowed time, [Simpson] may submit an order disallowing [POC 3-1] . . . ." Civil Minute Order (Jan. 13, 2012).

One week after the deadline, on February 14, 2012, Deutsche Bank filed Proof of Claim 6-2 ("POC 6-2").[4] Deutsche Bank indicated that this served to amend a previously filed claim, but confusingly stated that it amended POC 6-1. Even if POC 6-2 was intended to amend POC 6-1, the Panel understands that the overarching intent was to amend POC 3-1.[5] Deutsche Bank again filed a declaration by Perez, but this time she also declared that Deutsche Bank possessed the original Note and that she had reviewed it.

On February 19, 2012, five days after Deutsche Bank's filing, Simpson filed a proof of service indicating that he had served Deutsche Bank with his proposed order disallowing POC 3-1

---

[4]According to Deutsche Bank, Proof of Claim 6-1 ("POC 6-1") was a misfiling, and POC 6-2 is the operative document.

[5]The relevant content of POC 3-1 and POC 6-2 is identical, including the creditor's name, the claim amount, and the basis for the claim.

5

in accordance with the Conditional Order. Deutsche Bank opposed, arguing that it missed the February 7 deadline only because of technical glitches with the bankruptcy court's electronic filing system. Nonetheless, on March 19, 2012, the bankruptcy court entered an order disallowing POC 3-1 ("Disallowance Order"). The Disallowance Order said nothing about POC 6-2.

On June 5, 2012, Simpson objected to POC 6-2 and filed a supporting memorandum of points and authorities. He contended that POC 6-2 was untimely filed. He also restated his earlier challenges to POC 3-1 and made various new contentions. The crux of his substantive arguments was that Deutsche Bank did not have standing to prosecute a proof of claim due to various infirmities with the conveyances of the relevant interests in the Note and the Deed of Trust.

After a hearing, the bankruptcy court found that Deutsche Bank had established that it possessed the original Note, which was endorsed in blank, and that it was the successor beneficiary under the Deed of Trust. Accordingly, the court determined that Deutsche Bank was the Note's holder and thus had standing to prosecute the proof of claim.

As to the timeliness of POC 6-2, the court stated that its Conditional Order was not self-executing; it did not automatically disallow POC 3-1. Rather, the Conditional Order merely permitted Simpson to lodge a proposed order disallowing POC 3-1 if Deutsche Bank did not meet the February 7, 2012 deadline. By the time Simpson had submitted his proposed order on February 19, 2012, Deutsche Bank had already amended POC 3-1 by filing POC 6-2 on February 14, 2012. Given this sequence of

6

events, the bankruptcy court determined that it had erred by entering the Disallowance Order. Alternately, the court held that the untimeliness of POC 6-2 was the result of excusable neglect.

On August 16, 2012 the bankruptcy court entered an order overruling Simpson's objection to POC 6-2 and vacating the Disallowance Order. In effect, the court determined that POC 6-2 was an allowed secured claim against the bankruptcy estate.

On August 24, 2012, Simpson timely filed this appeal, BAP No. EC-12-1445. He appeals the bankruptcy court's order of August 16, 2012, challenging Deutsche Bank's standing and the court's decision to vacate the Disallowance Order.

On August 29, 2012, Deutsche Bank moved for relief from stay to foreclose on the Property. The bankruptcy court granted the motion on October 3, 2012. Simpson timely appealed the order lifting stay, BAP No. EC-12-1527, but did not obtain a stay pending appeal from either the bankruptcy court or the Panel. On November 30, 2012, the Property was sold at a nonjudicial foreclosure sale. After the sale, we dismissed this second appeal, BAP No. EC-12-1527, as moot.

In this appeal, BAP No. EC-12-1445, Simpson first argues that POC 6-2 did not amend POC 3-1, but rather was a new untimely filed proof of claim. He next contends that the bankruptcy court did not have sufficient grounds to vacate the Disallowance Order. Relying on various alleged deficiencies in the Note, the Deed of Trust, and the Assignment, Simpson also argues that Deutsche Bank lacked standing. Finally, Simpson argues that the bankruptcy

7

court should not have found excusable neglect.[6]

Deutsche Bank argues that it had standing to pursue its claim and that the bankruptcy court correctly determined that its failure to meet the amendment deadline was due to excusable neglect. Deutsche Bank further contends that the different versions of the Note simply represented the state of the Note at different points in time: pre- and post-endorsement, and with and without a stamp indicating that a copy was certified.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in vacating the Disallowance Order and in allowing POC 6-2?

## STANDARDS OF REVIEW

We review the bankruptcy court's conclusions of law de novo and its factual findings under the clearly erroneous standard. Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 32 (9th Cir. BAP 2008). A finding of fact is clearly erroneous only if it is illogical, implausible, or without support in the record. See Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010). If two permissible views of the

---

[6]Simpson also asserted on appeal that Deutsche Bank committed bankruptcy fraud under 18 U.S.C. § 157. But we cannot rule upon this issue as bankruptcy fraud is a criminal matter not within the jurisdiction of the bankruptcy court or this Panel. 18 U.S.C. § 3231 (2012); see Griffith v. Oles (In re Hipp, Inc.), 895 F.2d 1503, 1518 (5th Cir. 1990).

8

evidence are possible, the trial judge's choice between them cannot be clearly erroneous. <u>Anderson v. City of Bessemer City, N.C.</u>, 470 U.S. 564, 573-74 (1985).

**DISCUSSION**

**A.   General Legal Principles Regarding Bankruptcy Claims**

Creditors may file proofs of claim. § 501(a). "A proof of claim is a written statement setting forth a creditor's claim." Rule 3001(a). "A proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim." Rule 3001(f).

In a Chapter 13 case, the creditor must file a proof of claim with respect to any unsecured claim. Rule 3002(a). Even then, however, the claim must be "allowed" before it can serve as the basis for any distribution. Allowance initially is not difficult to obtain. "A claim . . . , proof of which is filed under section 501 . . . , is deemed allowed unless a party in interest . . . objects." § 502(a).

"If [an] objection to a claim is made, the court . . . shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount[,]" with various exceptions. § 502(b). The only exception relevant here is that a claim shall not be allowed if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." § 502(b)(6). Put another way, "the court must allow the claim if it is enforceable against <u>either</u> the debtor <u>or</u> his property." <u>Johnson v. Home State Bank</u>, 501 U.S. 78, 85 (1991) (emphasis in original).

The effect of an allowed claim is that the claimant is deemed to have a valid "right to payment," the claim's amount is established, and the claimant is entitled to a distribution from the bankruptcy estate; however, if a claim is disallowed, that disallowance is not a finding that the claimant engaged in any illegal activity, such as wrongful foreclosure or fraud. See § 101(5); Rule 3021; Cotchett, Pitre & McCarthy v. Silver, 2012 WL 1657620 at *13 (E.D. Cal. 2012); In re Hudson, 260 B.R. 421, 430 (Bankr. W.D. Mich. 2001).

Secured creditors such as Deutsche Bank do not need to file proofs of claim. Meadowbrook Estates v. McElvany, Inc. (In re Meadowbrook Estates), 246 B.R. 898, 902 (Bankr. E.D. Cal. 2000) (citing In re Tarnow, 749 F.2d 464, 465 (7th Cir. 1984)). In the absence of a proof of claim, a secured creditor's lien passes through the bankruptcy and remains in place; "the debtor's [personal] liability for the secured creditor's claim will be discharged and the creditor will not receive a dividend from the estate." Id.; see also Johnson, 501 U.S. at 83. But when a secured creditor wants to obtain a distribution under a confirmed Chapter 13 plan, that creditor must file a proof of claim. See Rule 3021; Dixon v. I.R.S. (In re Dixon), 218 B.R. 150, 151 (10th Cir. BAP 1998) (applying Rule 3021 in a Chapter 13 case).

A claim secured by property of the estate is bifurcated into two claims if the value of the collateral is less than the amount of the debt. § 506(a). There is a secured claim equal to the value of the collateral and an unsecured claim for the remainder (the deficiency). Id. The creditor's property right in the lien is thus preserved. For the secured claim, the creditor can seek

10

relief from stay to foreclose its lien or accept payment in the Chapter 13 plan to protect its interest. The Chapter 13 plan pays priority claims, and if proceeds remain, the plan generally pays all or part of the unsecured claim. See § 1322(a)(2), (b)(1), (b)(8). But see Downey Savs. & Loan Ass'n v. Metz (In re Metz), 820 F.2d 1495, 1498-99 (9th Cir. 1987) (Chapter 13 plan with zero payments to unsecured creditors not necessarily filed in bad faith so long as all of debtor's disposable income allocated to the plan). Any remaining portion of the unsecured claim at plan completion is discharged. 1328(a); see also Lawrence Tractor Co. v. Gregory (In re Gregory), 705 F.2d 1118, 1122 (9th Cir. 1983) (Chapter 13 discharge includes unsecured debts even if none of the plan payments were allocated to those debts so long as the plan "provided for" the debts under Section 1328(a) by "deal[ing] with [them] or refer[ring] to [them]").

## B. Simpson's Contentions Regarding Deutsche Bank's Claim

In this appeal, Simpson's contentions boil down to three key arguments: (1) the bankruptcy court should not have vacated the March 19, 2012 Disallowance Order; (2) POC 6-2 should have been disallowed as untimely; and (3) the bankruptcy court should have sustained his objection to POC 6-2 for the same reason it sustained his objection to POC 3-1, because Deutsche Bank did not establish it was a person entitled to enforce the note and hence lacked standing to file a proof of claim. We will address each of these arguments in turn.

### 1. Vacatur of Disallowance Order

Simpson asserts that the bankruptcy court improperly vacated

11

the Disallowance Order. Simpson claims, as a matter of procedure, that the court should not have vacated the Disallowance Order sua sponte and, in the alternative, should have given him advance notice and an opportunity for a hearing on the issue of whether the Disallowance Order should be reconsidered.

We are not persuaded that Simpson's procedural claims justify reversal of the bankruptcy court's decision to vacate the Disallowance Order. Section 502(j) and Rule 3008 govern reconsideration of claims, but neither provision indicates that the bankruptcy court was prohibited from sua sponte reconsidering the Disallowance Order. Moreover, another Bankruptcy Code provision appears to explicitly give the court authority to act on its own motion under such circumstances. See § 105(a); see also, Kirwan v. Vanderwerf (In re Kirwan), 164 F.3d 1175, 1177 (8th Cir. 1999) (holding that bankruptcy court had authority to sua sponte reconsider disallowance of claims); (Oudomsouk v. Bank of America, N.A. (In re Oudomsouk), 483 B.R. 502, 514-54 (Bankr. M.D. Tenn. 2012) (same).

As for the requirement of advance notice and a hearing, that is a closer issue, because the bankruptcy court apparently raised the issue of reconsidering the Disallowance Order for the first time in its tentative ruling issued just before the August 14, 2012 hearing on POC 6-2. Rule 3008 and the accompanying Advisory Committee Notes both generally indicate that advance notice and a hearing are required. But notice and hearing under the bankruptcy code are flexible concepts, see § 102(1)(A), and the Ninth Circuit has held that defective notice and opportunity for

12

hearing is not grounds for reversal unless the appellant establishes prejudice. Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 776-77 (9th Cir. 2008). Here, Simpson has not demonstrated any prejudice. The bankruptcy court's decision to vacate the Disallowance Order was based on its interpretation of another of its orders – the Conditional Order – and we must give broad deference to the bankruptcy court in interpreting its own orders. Rosales v. Wallace (In re Wallace), --- B.R. ---, 2013 WL 1562832 (9th Cir. BAP 2013) (citing Marciano v. Fahs (In re Marciano), 459 B.R. 27, 35 (9th Cir. BAP 2011)). Simpson has not pointed us to us any reason why the bankruptcy court's interpretation of the Conditional Order was erroneous. Nor are we independently aware of any such reason. Accordingly, Simpson has not demonstrated that he was prejudiced by the lack of advance notice or the lack of an additional hearing, so the reconsideration process, even if defective, would not justify a reversal of the bankruptcy court. In re Rosson, 545 F.3d at 776-77.

**2. Timeliness of POC 6-2**

Simpson next asserts that POC 6-2 should have been disallowed as untimely. According to Simpson, untimeliness necessarily flows from his interpretation of the Conditional Order as absolutely barring the amendment of POC 3-1 on and after February 7, 2014. But the bankruptcy court disagreed with Simpson's interpretation of the Conditional Order. Instead, the court in interpreting its own order determined that the Conditional Order did not bar Deutsche Bank from filing POC 6-2 one week later, on February 14, 2012. As we discussed above, we

13

give deference to the bankruptcy court's interpretation of its own orders, and we are not aware of any sound basis for concluding that the court misinterpreted its Conditional Order. Consequently, Simpson's timeliness argument also fails.[7]

### 3. Deutsche Bank's Standing

Simpson finally asserts that Deutsche Bank was not a person entitled to enforce the note and thus lacked standing to file its proof of claim. However, a creditor can establish that it is a person entitled to enforce a note by demonstrating that it holds the original note endorsed in blank. See <u>Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)</u>, 450 B.R. 897, 910-11 (9th Cir. BAP 2011). Here, the bankruptcy court found based on Perez's declaration that Deutsche Bank held the original Note endorsed in blank. Nothing that Simpson alleges or argues persuades us that the bankruptcy court's finding was illogical, implausible or not supported by the record. Accordingly, Simpson's standing argument lacks merit.

### C. Harmless Error

As indicated above, none of Simpson's arguments persuade us that we should reverse the order appealed. But even if there were some sort of error in the bankruptcy court's decision, we still would not reverse because we must ignore harmless error. See <u>Van Zandt v. Mbunda (In re Mbunda)</u>, 484 B.R. 344, 355 (9th Cir. BAP 2012). Any bankruptcy court error here would have been

---

[7]In the alternative, the bankruptcy court found that Deutsche Bank's untimely filing of POC 6-2 was due to excusable neglect. In light of our conclusion that the bankruptcy court did not err in refusing to disallow POC 6-2 as untimely, we decline to address the excusable neglect issue.

harmless as to Simpson. As explained below, the undisputed fact that the Property has been foreclosed upon subsequent to the filing of this appeal provides Simpson with a complete defense against Deutsche Bank's proof of claim, which defense Simpson can assert via a § 502(j) motion for reconsideration. As a result, our decision affirming the bankruptcy court's prior allowance of Deutsche Bank's claim should be of little concern to Simpson, inasmuch as he now can assert in the bankruptcy court meritorious grounds for reconsideration of the allowance of Deutsche Bank's claim.[8]

When a debt is nonrecourse as to the debtor, or the creditor otherwise does not have a valid deficiency judgment against the debtor, the creditor's recovery is limited to the value of the collateral upon its sale or to any plan distributions made on account of the secured claim. In other words, the debtor has no _in personam_ liability related to the debt secured by the property. See First Nat'l Bank of Cal. v. Weinstein (In re Weinstein), 227 B.R. 284, 292 (9th Cir. BAP 1998) ("[T]he undersecured creditor with a nonrecourse unsecured claim would not be entitled to a distribution in bankruptcy."). If the lien securing the secured claim is foreclosed and the property is sold, then the secured creditor's claim must be disallowed because, to the extent that the claim was secured, it has been satisfied by the proceeds of the foreclosure sale, and, to the

---

[8]We pause here to emphasize that, while the post-appeal foreclosure does affect Deutsche Bank's proof of claim, it does not give Simpson valid grounds for reconsideration of either the bankruptcy court's prior relief from stay order or the foreclosure itself.

15

extent that the claim was unsecured, it is unenforceable.

Applicable non-bankruptcy law gives particular significance to Deutsche Bank's post-appeal foreclosure. Under California law, there can be no deficiency judgment after a nonjudicial foreclosure sale such as occurred here after the notice of appeal was filed. See Cal. Civ. Proc. Code § 580d (West 2012) ("Section 580d"). Section 580d thus extinguishes any in personam liability that a borrower may have on a debt upon nonjudicial foreclosure of real property collateral securing that debt.

Here, Deutsche Bank may have had an allowed secured claim against the estate at the time of the petition filing and until the foreclosure sale. That is the dispute the parties have framed in this appeal. But Deutsche Bank's nonjudicial foreclosure largely renders irrelevant the issues raised in this appeal.

The nonjudicial foreclosure, the occurrence of which is not and cannot be disputed, raises the legal effect of Section 580d. The effect of this statute also is indisputable. In light of the foreclosure sale, any in personam liability that Simpson or his estate otherwise may have had was extinguished. This conclusion is not affected by the possible community claim nature of the debt underlying the Note. After the nonjudicial foreclosure, Section 580d renders nonrecourse any debt evidenced by the Note — for both Simpson and his wife.

In sum, Section 580d rendered unenforceable Deutsche Bank's post-foreclosure deficiency claim against Simpson and his bankruptcy estate. As a result, the prior allowance of Deutsche Bank's claim is subject to reconsideration under § 502(j), and

any error of the bankruptcy court in its prior rulings leading up to the allowance of that claim would have been harmless.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's allowance of Deutsche Bank's claim, without prejudice to Simpson filing in the bankruptcy court a § 502(j) reconsideration motion based on Deutsche Bank's foreclosure on the Property, which extinguished Deutsche Bank's claim in its entirety.